**WESTERN WATERPROOFING CO., INC., Petitioner,**

v.

**Ray MARSHALL, Secretary of Labor, and Occupational Safety and Health Review Commission, Respondents.**

No. 77–1324.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1978.

Decided May 9, 1978.

Rehearing and Rehearing En Banc Denied June 2, 1978.

Thomas M. Moore (argued), and Richard
W. Miller of Miller, Simmons, Moore &

Jung, Kansas City, Mo., on brief, for petitioner.

Charles I. Hadden, Atty. U. S. Dept. of Labor, Washington, D. C. (argued), Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for OS&HRC, Michael H. Levin, Counsel for App. Litigation, and Allen H. Feldman, Asst. Counsel for App. Litigation, Washington, D. C., for respondents.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

■ Appellant, Western Waterproofing Co., Inc. (Western), appeals from an Occupational Safety and Health Review Commission (Review Commission) decision finding Western in willful violation of the Occupational Safety and Health Act of 1970[1] (Act).[2] In substance, the Review Commission found that Western had willfully failed to comply with construction safety standards requiring employees to be protected by approved safety belts attached to lifelines when working on two-point suspension scaffolds,[3] requiring such scaffolds to be securely lashed to the building,[4] and requiring such scaffolds to be equipped with toeboards and midrails.[5]

The facts surrounding the alleged violations are largely uncontested. On July 11, 1974, Western employees were engaged in sandblasting and finishing operations on the exterior walls of a four-story brick building in Omaha, Nebraska. They were working from two-point suspension scaffolds suspended at various heights ranging from approximately 17 to 47 feet above the ground. The scaffolds were equipped with a guardrail on the platform edge facing away from the building, but had no toeboards or midrails on any of the sides and were not lashed to the walls of the building. No lifelines had been rigged, and some five employees were working from the scaffolds without safety belts.

Following an inspection by Occupational Safety and Health Administration (OSHA) compliance officers, Western was cited for willfully violating the safety belt and lifeline standard,[6] the lashing standard,[7] and a general scaffolding standard requiring scaffolds to have guardrails and toeboards.[8]

1. 29 U.S.C. § 651 et seq.

2. Western also appeals from the Review Commission's finding of a nonserious violation of the construction fire protection standard, 29 C.F.R. § 1926.150(a)(1) and a corresponding $90 penalty. A careful review of the record indicates there was substantial evidence to support the finding and affirmance of the $90 penalty was not an abuse of discretion. This item will not be further discussed.

3. 29 C.F.R. § 1926.451(i)(8) provides:
   On suspension scaffolds designed for a working load of 500 pounds, no more than two men shall be permitted to work at one time. On suspension scaffolds with a working load of 750 pounds, no more than three men shall be permitted to work at one time. Each employee shall be protected by an approved safety life belt attached to a lifeline. The lifeline shall be securely attached to substantial members of the structure (not scaffold), or to securely rigged lines, which will safely suspend the employee in case of a fall. In order to keep the lifeline continuously attached, with a minimum of slack, to a fixed structure, the attachment point of the lifeline shall be appropriately changed as the work progresses.

4. 29 C.F.R. § 1926.451(i)(9) provides:
   Two-point suspension scaffolds shall be securely lashed to the building or structure to prevent them from swaying. Window cleaners' anchors shall not be used for this purpose.

5. 29 C.F.R. § 1926.451(i)(11) provides:
   Guardrails made of lumber, not less than 2 × 4 inches (or other material providing equivalent protection), approximately 42 inches high, with a midrail, and toeboards, shall be installed at all open sides and ends on all scaffolds more than 10 feet above the ground or floor. Toeboards shall be a minimum of 4 inches in height. Wire mesh shall be installed in accordance with paragraph (a)(6) of this section.

6. 29 C.F.R. § 1926.451(i)(8); see note 3 supra.

7. 29 C.F.R. § 1926.451(i)(9); see note 4 supra.

8. 29 C.F.R. § 1926–451(a)(4) provides:
   Guardrails and toeboards shall be installed on all open sides and ends of platforms more than 10 feet above the ground or floor, except needle beam scaffolds and floats (see paragraphs (p) and (w) of this section). Scaffolds 4 feet to 10 feet in height, having ɛ

The proposed penalty was $9000. Western timely filed its notice contesting the alleged violations contained in the citation and the proposed penalty as excessive.

The administrative law judge affirmed a willful violation of these three standards and the proposed penalty of $9000. Western timely filed its petition for discretionary review with the Review Commission and review was granted. The Review Commission, Commissioner Moran dissenting, held that Western had willfully violated the safety belt and lifeline standard and the lashing standard. The Review Commission refrained from ruling on whether Western had willfully violated the general scaffolding standard requiring guardrails and toeboards [9] and, instead, sua sponte amended the citation and held that Western had willfully violated the more specific standard requiring midrails in addition to guardrails and toeboards.[10] We have jurisdiction to hear Western's appeal under section 11(a) of the Act, 29 U.S.C. § 660(a), the alleged violations having occurred in Omaha, Nebraska.

The principal issues in this appeal are whether there was substantial evidence to support the finding of the Commission that Western willfully violated the lashing standard, toeboard standard, and the lifeline and safety belt standard and whether the Commission abused its discretion in imposing the $9000 penalty. 29 U.S.C. § 660(a); see *Brennan v. OSHRC and Interstate Glass Co.*, 487 F.2d 438 (8th Cir. 1973).

Western argues that its failure to install toeboards or to lash the scaffold to the building was not a willful violation of the Act because it met the underlying purpose of the provision through other means.[11] In dealing with this argument we must define what constitutes a willful violation under the Act. Although a "willful violation" is not defined in the Act, the Review Commission and the Secretary of Labor have interpreted a willful violation to be "an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements." *General Electric Co.*, [1977] 3 Empl. Safety & Health Guide (CCH) (1977–1978 Occup. Safety & Health Dec.) ¶ 21,853 (May 19, 1977); *Kent Nowlin Constr., Inc.*, [1977] 3 Empl. Safety & Health Guide (CCH) (1977–1978 Occup. Safety & Health Dec.) ¶ 21,550 (Feb. 15, 1977); *Williams Enterprises, Inc.*, [1976–1977] Occup. Safety & Health Dec. (CCH) ¶ 21,071 (Sept. 8, 1976). "When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Usery v. Godfrey Brake & Supply Service, Inc.*, 545 F.2d 52, 55 (8th Cir. 1976).

The Review Commission's definition is in accord with that adopted by the Fourth, Tenth and First Circuits. In *Intercounty Constr. Co. v. OSHRC*, 522 F.2d 777, 779–80 (4th Cir. 1975), *cert. denied*, 423 U.S.

---

minimum horizontal dimension in either direction of less than 45 inches, shall have standard guardrails installed on all open sides and ends of the platform.

9. 29 C.F.R. § 1926.451(a)(4); see note 8 *supra.*

10. 29 C.F.R. § 1926.451(i)(11); see note 5 *supra.*

11. Commissioner Moran, dissenting, agreed with the majority affirmance of the charges alleging lashing and guardrail violations. But it was his view that Western's failure to lash was based on its good faith belief that the suspension system was tight enough to prevent lateral movement and make the scaffold safe for employee use. He would affirm only a nonserious violation. As to the guardrail viola-

tion, Commissioner Moran would not affirm it as willful because safety precautions, although inadequate, were provided by Western to protect against a possible falling hazard, citing *Frank Irey, Jr., Inc. v. OSHRC*, 519 F.2d 1200, 1207 (3d Cir. 1974), *aff'd en banc*, 519 F.2d 1215 (3d Cir. 1975), *aff'd on other grounds*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). He would affirm a serious violation because the record indicates that death or injury could result if an accident occurred. Furthermore, he would vacate the lifeline violation because the foreman was fully instructed with respect to requiring the employees to use the lifeline and safety belt equipment. It was his view that it was improper to impute the foreman's knowledge to Western.

1072, 92 S.Ct. 854, 47 L.Ed.2d 82 (1976), the court observed that "[n]o showing of malicious intent is necessary. * * * Regardless of any good-faith belief that the work area remained safe the fact is that the company knowingly chose not to comply with the OSHA regulations and requirements. That decision was a willful action in violation of the law."

In *United States v. Dye Constr. Co.*, 510 F.2d 78, 81 (10th Cir. 1975), the court approved a jury instruction on willfulness which reads as follows:

> The failure to comply with a safety standard under the Occupational Safety and Health Act is willful if done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally.

In *F. X. Messina Const. Corp. v. OSHRC*, 505 F.2d 701, 702 (1st Cir. 1974), the court, in affirming the Commission's finding of willfulness, observed: "Petitioner, through its foreman, made its choice, a conscious, intentional, deliberate, voluntary decision, which, regardless of a venial motive, properly is described as willful." *Cf. Frank Irey, Jr., Inc. v. OSHRC*, 519 F.2d 1200 (3d Cir. 1974), *aff'd en banc*, 519 F.2d 1215 (3d Cir. 1975), *aff'd on other grounds*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). "Willfulness connotes defiance or such reckless disregard of consequences as to be equivalent to a knowing, conscious, and deliberate flaunting of the Act. Willful means more than merely voluntary action or omission—it involves an element of obstinate refusal to comply." *Id.* at 1207. We are in accord with the views expressed in the Fourth, Tenth and First Circuits set out above.

■ In applying this standard to the present case, we need not decide whether or not Western did in fact believe that their actions met the underlying purpose of the standards through other means. Western's management personnel were well aware of the scaffolding standards for which they were cited. Western's officials substituted their own judgment for the provisions of the standards and therefore cannot escape the conclusion that they acted voluntarily with either intentional disregard of, or plain indifference to, the requirements of the Act.[12] The regulations allow no such unbridled discretion.

For example, the Commission made the following observation with respect to the lashing citation:

> With respect to the lashing allegation, however, the standard is unequivocal, and Respondent argues only that it did not comply with the standard because it thought the scaffold was adequately prevented from swaying without lashing. Essentially, Respondent's position is that it may disregard the standard if it unilaterally determines that compliance is not necessary. We agree with the Judge that Respondent's position amounts to a deliberate choice to disregard the requirements of the standard. The violation of 1926.451(i)(9) was therefore willful. [Footnote omitted.]

We agree with the Commission. We note further that the record indicates that without lashing there was little protection if a storm or wind came up.

■ Western also contends it was an abuse of discretion for the Review Commission to sua sponte amend the citation to show a willful violation of the more specific standard at 29 C.F.R. § 1926.451(i)(11) requiring midrails and toeboards instead of the originally cited standard at 29 C.F.R. § 1926.451(a)(4) which required only toeboards. The evidence clearly shows that Western made a conscious decision not to use toeboards and therefore was in willful violation of the originally cited standard requiring toeboards. However, the Commission's amendment of the citation to allege a violation of the standard requiring midrails is another matter.

---

12. The Act does provide for an application to the Secretary of Labor for a variance in a situation where an employer believes he can satisfy the purpose of the statute by other means. Section 6(d) of the Act, 29 U.S.C. § 655(d).

During the hearing before the administrative law judge at the time the Secretary offered evidence concerning the absence of midrails on the scaffolding, counsel for the Secretary stated:

As I say, I'm offering the evidence on midrails to just show the issue of willfulness generally. I am not attempting to show a violation of the standard [29 C.F.R. § 1926.451(i)(11)] since it wasn't alleged.

In view of the Secretary's statement that no attempt was being made to show a violation of the midrail standard, we agree that the Commission erred in amending the citation during the review proceedings. We have recognized that in a proper case both the citation and the proposed penalty may be amended at the hearing before the administrative law judge. Furthermore, the Review Commission may affirm, decrease or increase the penalties proposed by the Secretary. *Long Mfg. Co., N.C., Inc. v. OSHRC*, 554 F.2d 903, 907–08 (8th Cir. 1977).

Under the circumstances the Review Commission could consider the evidence concerning midrail violations on the general issue of willfulness. It is our view, however, that since Western was specifically advised that no attempt to show a violation was being made, it was error for the Commission to amend the charge from a 29 C.F.R. § 1926.451(a)(4) violation to a violation of 29 C.F.R. § 1926.451(i)(11).

■ Western next contends it should be excused from responsibility for the acts of its working foreman in failing to rig lifelines or require safety belts. An employer is excused from responsibility for acts of its supervisory employees only if it shows that the acts were contrary to a consistently enforced company policy, that the supervisors were adequately trained in safety matters, and that reasonable steps were taken to discover safety violations committed by its supervisors. *Ocean Electric Corp.*, [1975–1976] Occup. Safety & Health Dec. (CCH) ¶ 20,167 (Nov. 21, 1975), *pet. for review filed*, No. 76–1060 (4th Cir. Jan. 16, 1976); *B–G Maintenance Management,*

*Inc.*, [1976–1977] Occup. Safety & Health Dec. (CCH) ¶ 20,744 (June 1, 1976).

Western presented testimony that it is company policy to require the use of safety belts when employees are working on two-point suspension scaffolds, that the working foreman was aware of this company policy, that the working foreman had been instructed by the superintendent to rig lifelines, and that Western had no reason to believe that the working foreman would not enforce the rule requiring the use of safety belts.

However, the record discloses that the scaffolds were rigged and placed in use before noon on the day of the inspection. OSHA compliance officers arrived about 3:00 p.m. and noted that lifelines were not installed with respect to any of the four scaffolds in place and that none of the workmen were wearing safety belts. During the inspection the foreman told Mr. Beelman, compliance officer, that none of this equipment was present at the job site. (The administrative law judge so found.) Later in the hearing the foreman testified that he had been instructed to be sure the lifelines were up and the safety belts utilized. He testified he didn't recall being asked if this equipment was on the job but that the equipment was on the job. He further stated: "I told them that I had— that I was busy rigging over and that I had to bore holes and stuff up there to put them down and I just didn't have the time. I was too busy and I just didn't do it." The scaffolds were suspended at various heights ranging from 17 to 47 feet above ground level. Five workmen were noted on the scaffolds without safety belts or lifelines to which to attach them.

■ The administrative law judge also took note that Western had previously been cited for failure to comply with scaffold standards with respect to guardrails, midrails and toeboards under 29 C.F.R. § 1926.451(i)(11) and under 29 C.F.R. § 1926.451(i)(8) for having an employee on the same type scaffold whose lifeline was not attached. These citations were issued following a fatal accident in which an em-

ployee fell from a scaffold on the eleventh floor to a fifth floor mezzanine after apparently suffering a seizure. *See Marshall v. Western Waterproofing Co., Inc.,* 560 F.2d 947 (8th Cir. 1977). The Review Commission held that it was error to admit the prior citation as a "history of repeated conduct in violation of the Act" because the prior citation was vacated by the administrative law judge because of failure to conform to section 8(e) of the Act, 29 U.S.C. § 657(e). (The instant hearing occurred prior to our holding in *Marshall,* 560 F.2d 947.)

Nevertheless, the prior citation and conferences in connection therewith were relevant to show Western's knowledge as to the requirements of the Act and Regulations and the exposure of its employees to serious injury or death resulting from a failure to comply. Failure of an individual employee to hook up his safety belt might conceivably go unnoticed, but failure to rig the lifelines for three hours was inexcusable in this case. We have no difficulty in affirming this violation as willful on the part of Western.

In summary, we hold that there was substantial evidence to support the administrative law judge's finding that Western willfully violated the lashing standard and the safety belt and lifeline standard. Furthermore, the evidence fully supports the conclusion that Western willfully violated the toeboard standard contained in the original citation. We vacate the Commission's determination that Western is guilty of a willful violation of the midrail standard.

The matter of penalty is within the discretion of the Commission. Whether or not the $9000 penalty should be reduced, and, if so, in what amount, is within the discretion of the Commission.

Affirmed in part and reversed in part. Remanded for further proceedings consistent with this opinion.