**NATIONAL STEEL AND SHIPBUILD-ING COMPANY, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMIS-SION, Respondent.**

No. 78–2695.

United States Court of Appeals, Ninth Circuit.

Oct. 29, 1979.

William F. Terheyden, San Francisco, Cal., argued for petitioner; William C. Wright, Littler, Mendelson, Fasttiff & Tichy, P. C., San Francisco, Cal., on the brief.

Eric W. Cloud, Thomas L. Holzman, Washington, D. C., argued for respondent.

Before CHOY and TANG, Circuit Judges, and RENFREW,* District Judge.

CHOY, Circuit Judge:

National Steel and Shipbuilding Co. (National) petitions for review of an order of the Occupational Safety and Health Review Commission (OSHRC or Commission) finding that it "willfully" violated a safety standard contrary to § 5(a)(2) of the Occupational Safety and Health Act (OSHA or Act), 29 U.S.C. § 654(a)(2).[1] We affirm.

I. *Statement of the Case*

National is engaged in building commercial and military oil tankers. During construction of a ship, a scaffolding is set up alongside the ship. The scaffolding is usu-

---

\* The Honorable Charles B. Renfrew, United States District Judge for the Northern District of California, sitting by designation.

1. Section 5 reads in part:
 (a) Each employer—

. . . . .

(2) shall comply with occupational safety and health standards promulgated under this chapter.

ally protected with top and midrails. When construction and inspection of the ship's tanks are completed, the scaffolding is dismantled.

Although the tanks are painted before installation in the ship, there often remain "holidays" or blemishes where the paint has been knocked off the tank by scaffolding or burned off by welding. As the scaffolding is being dismantled, a painter stands ready to touch up the holidays.

During a routine inspection of National's facility on October 10, 1974, an OSHA Compliance Officer observed an employee painting inside a tank "45 feet above the bottom of the tank which was lined with heating coils." The painter was standing on planking approximately two feet wide. There were no top or midrails remaining on the scaffolding. The touching up of each holiday took about a minute. The Commission found that the painter had to lean over the scaffolding—with the top and midrails removed—in order to paint the holidays. Nonetheless, the painter was not equipped with a safety belt or tied-off life line or any other type of fall protection.

The Secretary of Labor issued a citation to National for willfully violating 29 C.F.R. § 1916.41(i)(1) in violation of § 5(a)(2) of OSHA. Section 1916.41(i)(1) provides:

> Scaffolding, staging, runways, or working platforms which are supported or suspended more than 5 feet above a solid surface, or at any distance above the water, shall be provided with a railing which has a top rail whose upper surface is from 42 to 45 inches above the upper surface of the staging, platform, or runway and a midrail located halfway between the upper rail and the staging, platform, or runway.

The Secretary's citation read in relevant part:

> Employer permitted his employee to paint while standing on scaffold which was supported 45' above a solid surface

and not provided with a top rail and midrail, although the employer knew this condition was extremely dangerous and violated [§ 1916.41(i)(1)].

This constitutes a willful violation within the meaning of the Act.

The Secretary imposed a $5000 penalty.

National then filed a notice of contest. After a hearing, an administrative law judge (ALJ) affirmed the Secretary's complaint, though reducing the penalty to $2000. The OSHRC affirmed the ALJ's decision.

## II. "Willfully" Violates

Section 17(a) of OSHA, 29 U.S.C. § 666(a), provides:

> Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation.

We recently noted in *Todd Shipyards Corp. v. Secretary of Labor*, 586 F.2d 683 (9th Cir. 1978):

> Section 17 . . . provides that the maximum civil penalty for each violation of OSHA standards is generally $1,000. Section 17(a), however, provides that civil penalties up to $10,000 for each violation may be imposed on an employer who "willfully or repeatedly violates" OSHA standards.

*Id.* at 685.

In finding a "willful" violation here, the Commission referred to the First Circuit's definition of "willfully" for § 17(a) as enunciated in *F. X. Messina Construction Corp. v. Occupational Safety & Health Review Commission*, 505 F.2d 701 (1st Cir. 1974).[2] The First Circuit defined willfulness as "a conscious, intentional, deliberate, voluntary decision" even if there is no bad motive.

---

**2.** The Commission also referred to its decision affirmed by the Eighth Circuit in *Western Waterproofing Co. v. Marshall*, 576 F.2d 139 (8th Cir. 1978), *cert. denied*, 439 U.S. 965, 99

S.Ct. 452, 58 L.Ed.2d 423 (1979). *Western Waterproofing Co.* also embraced the majority rule. *See* slip opinion pp. 451–452 *infra*.

*Id.* at 702. The Fourth, Fifth, Sixth, Eighth, and Tenth Circuits have embraced similar definitions which do not require a showing of a bad motive. *See, e. g., Intercounty Construction Co. v. Occupational Safety & Health Review Commission,* 522 F.2d 777, .779–81 (4th Cir. 1975), *cert. denied,* 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976); *Georgia Electric Co. v. Marshall,* 595 F.2d 309, 317–19 (5th Cir. 1979); *Empire-Detroit Steel Division v. Occupational Safety & Health Review Commission,* 579 F.2d 378, 385 (6th Cir. 1978); *Western Waterproofing Co. v. Marshall,* 576 F.2d 139, 142–43 (8th Cir. 1978), *cert. denied,* 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1979); *United States v. Dye Construction Co.,* 510 F.2d 78, 81–82 (10th Cir. 1975). The majority has also approved the precise verbal formula urged by the Secretary, defining "a willful violation as one involving voluntary action, done either with an intentional disregard of, or plain indifference to, the requirements of the statute." *Georgia Electric Co.,* 595 F.2d at 319; *see Western Waterproofing Co.,* 576 F.2d at 142–43; *Intercounty Construction Co.,* 522 F.2d at 780; *Dye Construction Co.,* 510 F.2d at 81–82. This formula is based upon a Supreme Court decision defining willfulness in the context of a different statute providing for a civil penalty. *United States v. Illinois Central Railroad Co.,* 303 U.S. 239, 243, 58 S.Ct. 533, 82 L.Ed. 773 (1938).

The Third Circuit, the only other Court of Appeals to have addressed this question, has adopted a different definition. It has written:

It is obvious from the size of the penalty which can be imposed for a "willful" infraction—ten times that of a "serious" one—that Congress meant to deal with a more flagrant type of conduct than that of a "serious" violation. Willfulness connotes defiance or such reckless disregard

of consequences as to be equivalent to a knowing, conscious, and deliberate flaunting [*sic*] of the Act. Willful means more than merely voluntary action or omission—it involves an element of obstinate refusal to comply.

*Frank Irey, Jr., Inc. v. Occupational Safety & Health Review Commission,* 519 F.2d 1200, 1207 (3d Cir. 1974), aff'd en banc, 519 F.2d 1215 (3d Cir. 1975), *aff'd on other grounds sub nom. Atlas Roofing Co. v. Occupational Safety & Health Review Commission,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977).[3] The Third Circuit has subsequently applied this "flaunting" standard in the context of "repeated" violations under § 17(a). *Bethlehem Steel Corp. v. Occupational Safety & Health Review Commission,* 540 F.2d 157, 161 (3d Cir. 1976).

We believe that the majority rule—which does not require a bad motive for willfulness—better serves the congressional objectives in enacting OSHA and better reflects the statute. In *Todd Shipyards Corp.* we rejected the "flaunting" test in the context of "repeated" violations, noting that such a requirement would frustrate the purposes of OSHA by placing too great a burden on the Secretary.[4] 586 F.2d at 686. The same criticism may be made of the Third Circuit's "flaunting" standard in the context of "willful" violations. *See Georgia Electric Co.,* 595 F.2d at 319; *Intercounty Construction Co.,* 522 F.2d at 780. Additionally, we find persuasive the other arguments advanced in support of the majority definition of "willfully."

In *Intercounty Construction Co.,* the Fourth Circuit wrote:

We agree with the position adopted by the Commission in interpreting the statute that "willful" means action taken knowledgeably by one subject to the statutory provisions in disregard of the action's legality. No showing of malicious

---

3. The Third Circuit's definition of willfulness appears in the panel decision in *Frank Irey, Jr., Inc.* The Third Circuit en banc considered the effect of the Seventh Amendment on OSHRC penalty proceedings. 519 F.2d at 1215–26. The Supreme Court affirmed as to the Seventh Amendment issue.

4. We also observed that the Third Circuit had not distinguished between the "repeatedly" and "willfully" components of § 17(a). *Id.*

intent is necessary. A conscious, intentional, deliberate, voluntary decision properly is described as willful, "regardless of venial motive." *F. X. Messina Construction Corp. . . . .* 522 F.2d at 779–80. In thus adopting the First Circuit test upon which the Commission relied in the instant case, the Fourth Circuit explained:

> In reaching this conclusion we are not unmindful of the holding of the Third Circuit which found willfulness, in this statute, as connoting the element of "obstinate refusal to comply." *Irey . . . .* However, we decline to require the Commission to find such a bad purpose before it sustains a citation for a willful violation. To require bad intent would place a severe restriction on the statutory authority of OSHA to apply the stronger sanctions in enforcing the law, a result we do not feel was intended by Congress. Rather, we agree with the Commission that willfulness is used in the mere cognitive sense in civil statutes, and connotes bad purpose only when an element of a criminal act.

*Id.* at 780. The court also indicated that its definition "follows logically from the requirements of the" OSHA. *Id.* It also is consistent with the definition of "willfulness" given in other instances of civil penalties, including that provided by the Supreme Court in *Illinois Central Railroad. Id.* Finally it gives appropriate deference to the Commission's interpretation. *Id.* at 779; *see Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

█ Appellants retort that the Third Circuit's rule is preferable because it better distinguishes between "serious" violations and "willful" violations as those terms are used in § 17 of OSHA.[5] However, as the Fifth Circuit recently wrote:

> [T]he "bad purpose" requirement is not necessary to preserve the distinction between serious and willful violations. To prove a willful violation, the Secretary must show that the employer acted voluntarily, with either intentional disregard of or plain indifference to OSHA requirements. To prove a serious violation, a quite different showing need only be made. The gravamen of a serious violation is the presence of a "substantial probability" that a particular violation could result in death or serious physical harm. Whether the employer intended to violate an OSHA standard is irrelevant. The only question relevant to the employer's state of mind is whether he knew or with the exercise of reasonable diligence could have known of the violation. *See* 29 U.S.C.A. § 666(j).

*Georgia Electric Co.*, 595 F.2d at 318–19 (footnote omitted). We have noted the same distinguishing factor between serious and other violations. *Brennan v. Occupational Safety & Health Review Commission*, 511 F.2d 1139, 1142–44 (9th Cir. 1975).[6] We

---

**5.** Section 17(b) provides:

> Any employer who has received a citation for a serious violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, shall be assessed a civil penalty of up to $1,000 for each such violation.

Section 17(j) reads:

> For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not

with the exercise of reasonable diligence, know of the presence of the violation.

**6.** National misreads *Brennan* and its analysis of the legislative purpose underlying § 17. In *Brennan* we rejected the Government's contention that the knowledge requirement which § 17(j) imposes as to "serious" violations, *see* note 5 *supra*, did not apply to "non-serious" violations, which are not explicitly defined in OSHA. We noted that § 17(j) defined a serious violation as existing when "there is a substantial probability that death or serious physical harm could result" from a violation "unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 511 F.2d at 1142. *See* note 5 *supra*. We continued:

> Section (c), containing the only reference to non-serious violations, must be read in con-

conclude that the Commission did not err in relying upon the majority definition of "willfully."[7]

### III. Substantial Evidence Supporting the Commission's Findings

#### A. Standard of Review

We have noted:

> The OSHA itself provides the controlling standard of judicial review of the Commission's factual findings. Such findings are conclusive "if supported by substantial evidence on the record considered as a whole."

*Greyhound Lines-West v. Marshall*, 575 F.2d 759, 762 (9th Cir. 1978), *quoting* OSHA § 11(a), 29 U.S.C. § 660(a); *see Titanium Metals Corp. of America v. Usery*, 579 F.2d 536, 540 (9th Cir. 1978). Moreover, the

Commission's special expertise calls for providing it with considerable discretion in drawing inferences from the evidence. *Greyhound Lines-West*, 575 F.2d at 762. Thus, "[i]f facts are open to conflicting inferences, we are not at liberty to draw an inference different from the one drawn by the [Commission], even though it may seem more plausible and reasonable to us." *Queen Mary Restaurants Corp. v. NLRB*, 560 F.2d 403, 407 (9th Cir. 1977), *quoting NLRB v. Millmen, Local 550*, 367 F.2d 953, 956 (9th Cir. 1966).

Substantial evidence supports the Commission's findings and its inferences are eminently reasonable. Indeed, National does not challenge the key findings—such as the existence of a violative condition, its danger, National's knowledge of the condition, its knowledge of the regulation, and its

---

junction with Section (b). Both relate to employers who have merely "received a citation." Neither defines a violation. The sole difference between sections (b) and (c) lies in the mandatory assessment of penalty for serious violations and the permissive assessment for non-serious violations.

We note also, the use of "wilfully" and "knowingly" in those sections of 29 U.S.C. § 666 which refer to persons who "violate." Wilfulness, with which knowledge is necessarily equated, does not appear where the prohibited act is impossible without knowledge of the actor . . . or in Sections (b) and (c) which are concerned only with assessments upon citation. Whether the assessment be mandatory or permissive is made to turn solely on the nature of the violation, not on the presence or absence of employer knowledge.

*Id.* at 1144 (footnote omitted). We thus concluded that knowledge was a necessary element for both serious and non-serious citations. Although *Brennan* involved citations for serious and non-serious violations and no willful violations were alleged, *id.* at 1140, we also noted in dicta that knowledge was necessary to a finding of willfulness.

National reads the last sentence quoted as meaning that the distinction between a *serious* and *willful* violation rests on "the nature of the violation." However, *Brennan* is properly read as stating that "the nature of the violation," *i. e.*, probability of producing death or serious physical harm, distinguishes between *serious* and *non-serious* violations. Although *Brennan* noted in passing that knowledge was necessary for willfulness, it did not suggest that the relevant factor in finding a willful violation was "the nature of the violation."

Thus, *Brennan* is consistent with the view expressed by the Fifth Circuit in *Georgia Electric Co.* In creating the different penalties for serious and non-serious violations, Congress meant to distinguish between violations which by their nature are particularly harmful and those which are less dangerous. But the factor giving rise to the greatly enhanced penalties of § 17(a) is not the degree of danger inherent within the violative condition, but rather, the particularly improper "state of mind" with which the employer has violated the safety standard. *Cf. Todd Shipyards Corp. v. Secretary of Labor*, 586 F.2d 683, 685 (9th Cir. 1978) ("repeat" violation component of § 17(a) applicable only where employer's inattention to correcting hazard previously cited shows greater penalties necessary to gain compliance by that employer).

7. The Commission wrote approvingly in its decision:

> The [administrative law] judge also concluded that National's failure to provide fall protection for its painter "was inexcusable and constitutes a deliberate flaunting of the Act." He stated that the company viewed its "responsibility to comply with the Act's scaffolding requirements as secondary; something to be consciously ignored or disregarded." Therefore, Judge Cronin affirmed the citation for willful violation of 1916.41(i)(1).

In view of this finding, which is supported by the evidence, *see* part III *infra*, we believe that the Commission would have found willfulness even if it had followed the Third Circuit's approach, requiring "a knowing, conscious, and deliberate flaunting of the Act." *Frank Irey, Inc.*, 519 F.2d at 1207.

decision not to provide protected scaffolding. National, however, contends that the evidence established that it did not willfully violate the standard because (1) it believed in good faith that the standard was inapplicable and (2) it had not received a prior warning or citation concerning the scaffolding procedures.

### B. *Nonapplicability of Standard*

 National contends that the evidence established that it believed in good faith that § 1916.41(i)(1) did not apply to situations in which scaffolding was being taken down because the absence of the top and midrails was less dangerous to the painter than the alternative of requiring the guard rails would be to the workers dismantling the scaffolding.[8] Noting that "knowledge" is a necessary element of a "willful" charge, *Brennan*, 511 F.2d at 1144, National contends that its good faith belief means that it did not knowingly and willfully violate the standard and Act.

 We need not address whether and to what degree a good faith belief in the nonapplicability of a standard negates the knowledge element of a willful charge. Here the Commission noted that "the record establishes that National did not act in good faith since the record established it allowed its painter to work from the noncompliant scaffold for practical reasons rather than a serious belief that the standard did not apply." The Commission added: "Here . . . the facts are undisputed and the applicability of the standard is patent." Substantial evidence supports these findings and inferences.

### C. *Absence of Prior Warning or Citation*

National observes that prior to the citation here at issue, it had never received a warning or citation about its scaffolding practice. It concludes that the absence of such a prior warning or citation precludes a charge of willful violation.

 The receipt of a prior warning or citation may be a factor in determining if willfulness exists. However, such a prior warning or citation is not a necessary condition to finding willfulness. To hold otherwise would obliterate the distinction § 17(a) draws between "repeat" and "willful" violations. *See Todd Shipyards Corp.*, 586 F.2d at 686; Field Operations Manual, ch. VIII, § (B)(5)(b), *quoted in George Hyman Construction Co. v. Occupational Safety & Health Review Commission*, 582 F.2d 834, 839 (4th Cir. 1978). In the instant case, there is substantial evidence in the record considered as a whole to support the Commission's finding of willfulness notwithstanding the absence of a prior warning or citation.

AFFIRMED.

---

8. We also reject the contention that the Secretary and Commission could not apply § 1916.41(i)(1) to the present situation. The Commission observed that

> the exposed employee was not engaged in the dismantling operation but was using the scaffold here as a working platform to paint. Since this use was unrelated to the task of actually dismantling the scaffold, there is no basis to conclude that the painter's activity was exempt from the standard at 1916.41(i)(1) because of any defense based upon dismantling operations.

We have noted that an administrative agency's "reasonable interpretation of [its] own regulation should be accorded great respect by a court interpreting the regulation." *Smith v. Califano*, 597 F.2d 152, 156 n.7 (9th Cir. 1979); *see Clarkson Constr. Co. v. Occupational Safety & Health Review Comm'n*, 531 F.2d 451, 457 (10th Cir. 1976). The Secretary and Commission's application of § 1916.41(i)(1) to the instant case is reasonable and consistent with both the letter and spirit of OSHA. We therefore decline National's invitation to invalidate the standard as applied here and approve its method of dealing with safety concerns during the painting of holidays. *See Smith*, 597 F.2d at 156 n.7.