The ENSIGN–BICKFORD COMPANY,
Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Raymond J. Donovan, Secretary of Labor, Respondents.

No. 82–1649.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 19, 1983.

Decided Sept. 16, 1983.

James A. Wade, Hartford, Conn., with whom Timothy F. Bannon, Hartford, Conn., and Stephen B. Clarkson, Washington, D.C., were on brief, for petitioner. N. Beth Emery, Washington, D.C., entered an appearance for petitioner.

Robert D. McGillicuddy, Dept. of Labor, Washington, D.C., with whom Dennis K. Kade, Dept. of Labor, Washington, D.C., was on brief, for respondents. Edward H. Hoban, Occupational Safety and Health Review Commission, Washington, D.C., entered an appearance for respondents.

* Of the United States District Court for the Northern District of California, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. That section provides:
   (a) Each employer—

Before WRIGHT and SCALIA, Circuit Judges, and WEIGEL,* Senior District Judge.

Opinion for the court filed by Senior District Judge WEIGEL.

Dissenting opinion filed by Circuit Judge SCALIA.

WEIGEL, Senior District Judge:

Petitioner, the Ensign-Bickford Company, challenges an order of the Occupational Safety and Health Review Commission (the Commission) finding that petitioner willfully violated the general duty clause of the Occupational Safety and Health Act of 1970 (the Act), 29 U.S.C. § 654(a)(1).[1] As a result of the violation, the Commission imposed a civil penalty of $10,000 on petitioner. Finding substantial evidence in the record to support the decision of the Commission that petitioner committed a willful violation of the Act, we affirm.

Petitioner, engaged in the manufacture of explosives and pyrotechnic devices, operates a plant in Simsbury, Connecticut. In the summer of 1978, under contract with the United States Department of Defense, petitioner began producing anti-tank test rockets at that plant. Production required that the nose cone of each rocket be filled with a pyrotechnic mix that would burn brightly upon impact. After filling with the mix, employees of petitioner would vacuum the excess powder from the cones and then seal the mix into each nose cone by using a paper disc. To vacuum the excess powder, employees used "pencil vacuums" attached by rubber suction hoses to two vacuum pumps. Each vacuum system contained a collection chamber to prevent the powder from reaching the pumps. The mix was highly unstable, and could explode if exposed to friction, static electricity, or heat, all present in the pumps. On Septem-

(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees[.]

ber 14, 1978, one of the two pumps exploded, scattering metal fragments which injured six employees, at least one seriously.

Later that same day, compliance officers from the Occupational Safety and Health Administration (OSHA) inspected petitioner's manufacturing facility. Based on that inspection and on subsequent interviews with employees of petitioner, the Secretary of Labor (the Secretary) issued a citation charging that petitioner willfully violated the general duty clause of the Act by failing to prevent the explosive mix from entering the pumps, and proposed a $10,000 civil penalty.[2] Petitioner contested the citation. The Secretary then filed a formal complaint before the Commission. After a hearing, the Administrative Law Judge (ALJ) upheld the citation and the proposed penalty. The Commission adopted the ALJ's decision and order. *See* 29 U.S.C. § 661(i).

Petitioner raises three primary issues on appeal.

■ First, petitioner contends that the general duty clause of the Act, 29 U.S.C. § 654(a)(1), is unconstitutionally vague. This claim has been rejected by those courts of appeals which have considered it. *See Bethlehem Steel v. OSHRC,* 607 F.2d 871, 875 (3d Cir.1979); *Georgia Electric v. Marshall,* 595 F.2d 309, 322 n. 32 (5th Cir.1979). Furthermore, this Court has construed the general duty clause narrowly as requiring only that employers eliminate "preventable hazards" likely to cause death or serious injury to employees. *See National Realty & Constr. v. OSHRC,* 489 F.2d 1257, 1265–66 (D.C.Cir.1973). This standard provides employers with sufficiently specific notice of the requirements of the general duty clause. *See, e.g., McLean Trucking v. OSHRC,* 503 F.2d 8, 11 (4th Cir.1974).

Second, petitioner argues that OSHA regulation of contractors with the Department of Defense is preempted by a Department of Defense Contractor's Safety Manual for Ammunition, Explosives and Related Dangerous Materials. *See* Joint Appendix at 489–92. 29 U.S.C. § 653(b)(1) provides that "[n]othing in this chapter [enforcing OSHA requirements] shall apply to working conditions of employees with respect to which other Federal agencies * * * exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." Petitioner contends that because petitioner's contract with the Department of Defense requires petitioner to comply with that manual prescribing standards for petitioner's manufacturing activities, those activities are beyond the jurisdiction of the Commission.

■ The fact that petitioner bound itself in its contract with the Department of Defense to comply with the Department's safety manual on explosives manufacture does not have that effect. Such a contractual obligation does not constitute an "exercise [of] statutory authority to prescribe or enforce standards or regulations" sufficient to justify preemption under 29 U.S.C. § 653(b)(1). To hold otherwise would permit any federal agency to dilute, without congressional approval, the safety standards and remedies contained in the Act.[3] Preemption is appropriate only if a federal agency implements the regulatory apparatus necessary to replace those safeguards required by the Act. *See Baltimore & O.R.R. v. OSHRC,* 548 F.2d 1052, 1054–55 (D.C.Cir.1976); *see also Southern Ry. v. OSHRC,* 539 F.2d 335, 336 (4th Cir.), *cert. denied,* 429 U.S. 999, 97 S.Ct. 525, 50 L.Ed.2d 609 (1976).

■ Third, petitioner argues that the record lacks sufficient evidence to support the

---

**2.** The citation specifically alleged that:

The handling of the flash powder exposed the employees to an undue hazard, in that in Department 31 the employer did not provide adequate provisions for preventing the entrance of a Class B explosive (flash powder) into the duo-seal vacuum pump.

**3.** For example, the sole remedy available to the Department of Defense, after petitioner disregarded the safety standards set forth in the manual, was to terminate the contract. This stands in sharp contrast to the civil and criminal penalties provided for in the Act. *See* 29 U.S.C. § 666.

ALJ's finding that petitioner committed a willful violation of the Act's general duty clause. The Act punishes three types of violations of its provisions: ordinary violations, which may be punished by a fine of up to $1,000, serious violations, for which a fine of up to $1,000 "shall be assessed," and willful or repeated violations, which may be punished by a fine of up to $10,000. 29 U.S.C. § 666. Although the Act does not define the term "willful," courts have unanimously held that a willful violation of the Act constitutes "an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements." *Cedar Constr. v. OSHRC,* 587 F.2d 1303, 1305 (D.C.Cir.1978); *see L.R. Willson & Sons v. Donovan,* 685 F.2d 664, 667 n. 1 (D.C.Cir.1982); *Universal Auto Radiator Mfg. v. Marshall,* 631 F.2d 20, 23 (3d Cir. 1980); *Georgia Electric v. Marshall,* 595 F.2d 309, 319 (5th Cir.1979); *Kent Nowlin Constr. v. OSHRC,* 593 F.2d 368, 372 (10th Cir.1979); *Empire-Detroit Steel v. OSHRC,* 579 F.2d 378, 384–85 (6th Cir.1978); *Western Waterproofing Co. v. Marshall,* 576 F.2d 139, 143 (8th Cir.1978), *cert. denied,* 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1978); *Intercounty Constr. Co. v. OSHRC,* 522 F.2d 777, 779–80 (4th Cir.1975), *cert. denied,* 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976); *F.X. Messina Constr. Corp. v. OSHRC,* 505 F.2d 701, 702 (1st Cir.1974).

The record sustains the conclusion that petitioner exhibited "plain indifference to" its duties under the Act's general duty clause. Petitioner had actual and constructive notice of the explosive properties of the pyrotechnic mix. *See* Joint Appendix at 487–88. Further, petitioner was aware of accepted industry standards for the safe vacuum collection and disposal of such a mix. Nonetheless, petitioner repeatedly ignored these standards.

Petitioner improperly assembled the collection chambers used to collect the excess pyrotechnic mix and prevent it from entering the pumps. The production manager of petitioner's Aerospace Division, although thoroughly familiar with the design requirements of such collection systems, delegated the design and implementation of those systems to a worker who had no expertise in assembling them, who was unaware of the many devices available for the safe collection of explosives and pyrotechnics, and who, as a result, built an improvised collection chamber which failed to function properly. *See id.* at 502–03.

Petitioner made no attempt to test the effectiveness of the collection chambers under production conditions. Industry standards require such a test. *See id.* at 503–04. Petitioner's failure to comply with those standards resulted in petitioner's failure to discover the inadequacies of its collection systems.

Additional evidence supporting the finding of willful violation is the fact that petitioner failed to empty the vacuum pump collection chambers once per shift, as required by accepted industry standards. This failure allowed dangerously large quantities of the pyrotechnic mix to accumulate in the pumps' collection chambers. In fact, the ALJ found that the collection chambers were not emptied at all on either September 11 or 12, 1978. This failure, he found, may have resulted in an accumulation of explosive mix in the pumps themselves. *See id.* On September 14, 1978, one of the two pumps exploded.

Petitioner argues that because willfulness requires a "specific intent" to violate a particular OSHA regulation, a willful violation of the Act can occur only when an employer violates a specific OSHA regulation and not when the general duty clause is violated. Petitioner argues further that even if a willful violation of the general duty clause is possible under the Act, no aggravating factors exist in this case similar to those upon which other courts have based findings of willful violation. Neither contention has merit.

■ Willful violation of the general duty clause of the Act is legally cognizable. *See Central Soya De Puerto Rico v. Secretary of Labor,* 653 F.2d 38 (1st Cir.1981); *Empire-Detroit Steel v. OSHRC,* 579 F.2d 378 (6th Cir.1978). If an employer demonstrates "plain indifference" towards the

safety requirements of the general duty clause, no further showing is required to establish willfulness. An employer need not harbor malicious motives or possess a "specific intent" to violate a provision of the Act in order to commit a willful violation. *See, e.g., Babcock & Wilcox Co. v. OSHRC*, 622 F.2d 1160, 1167–68 (3d Cir. 1980); *Georgia Electric, supra*, 595 F.2d at 318–19; *Empire-Detroit Steel, supra*, 579 F.2d at 385.

■ The absence of a specific aggravating factor, such as prior OSHA violations, does not preclude finding willful violation of the general duty clause if the finding is based upon conduct constituting "plain indifference" towards the Act's requirements. *See, e.g., St. Joe Minerals v. OSHRC*, 647 F.2d 840, 848 n. 19 (8th Cir.1981); *National Steel & Shipbuilding v. OSHRC*, 607 F.2d 311, 317 (9th Cir.1979); *George Hyman Constr. v. OSHRC*, 582 F.2d 834, 839–40 & n. 10 (4th Cir.1978). Sufficient aggravating circumstances exist in the present case to support a finding of willfulness. Despite petitioner's expertise in the manufacture of explosive and pyrotechnic products and knowledge of the applicable industry safety standards, petitioner violated those standards in disregard of the general duty clause and of the safety of its employees. No further showing is required to establish willful violation of the Act. The decision and order of the Commission is affirmed.

SCALIA, Circuit Judge, dissenting:

I concur in the court's legal analysis, but cannot join in the conclusion that the record contains sufficient evidence to support a finding of willful violation.

In order to establish the "intentional disregard" or "plain indifference" necessary for that purpose, it is not enough to establish that the employer's negligence was the cause of the violation. This is evident from the statute's definition of "serious violation," which provides that that lesser category of offense is not made out if "the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(j) (1976). Since negligent ignorance constitutes a "serious violation," a "willful violation" presumably requires something more.

All of the cases cited by the majority in which the agency's assessment of penalties for willful violation has been sustained involve aggravating factors not present here: prior citations for the same or similar violations, *see Cedar Constr. Co. v. OSHRC*, 587 F.2d 1303, 1305 (D.C.Cir.1978); *Empire-Detroit Steel v. OSHRC*, 579 F.2d 378, 382 (6th Cir.1978); *F.X. Messina Constr. Corp. v. OSHRC*, 505 F.2d 701, 702 (1st Cir.1974); or deliberate disregard of a known safety requirement (often on the mistaken assumption that some other measure would suffice), *see Universal Auto Radiator Mfg. Co. v. Marshall*, 631 F.2d 20, 23 (3d Cir.1980); *Kent Nowlin Constr. Co. v. OSHRC*, 593 F.2d 368, 372 (10th Cir.1979); *National Steel & Shipbuilding Co. v. OSHRC*, 607 F.2d 311, 317 (9th Cir.1979); *Western Waterproofing Co. v. Marshall*, 576 F.2d 139, 143 (8th Cir.), *cert. denied*, 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1978); *Intercounty Constr. Co. v. OSHRC*, 522 F.2d 777, 779–80 (4th Cir.1975), *cert. denied*, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976); or failure to remedy a visibly dangerous condition known to supervisory personnel, *see Central Soya De Puerto Rico v. Secretary of Labor*, 653 F.2d 38, 39–40 (1st Cir.1981). Assessments for willful violation have been reversed where no more than the lack of diligence or adequate care has been shown. *See, e.g., St. Joe Minerals Corp. v. OSHRC*, 647 F.2d 840, 848 (8th Cir.1981); *Babcock & Wilcox Co. v. OSHRC*, 622 F.2d 1160, 1165–68 (3d Cir.1980).

This court has recognized that violation of the general duty clause of the Act, as opposed to violation of a specific regulation issued by the Secretary, raises special problems of interpretation. *See National Realty & Constr. Co. v. OSHRC*, 489 F.2d 1257, 1265–67 (D.C.Cir.1973). It poses special problems of proof as well.

As a practical matter ... a more concrete evidentiary showing is required to prove willfulness in the ... context [of violation of the general duty clause].

*St. Joe Minerals Corp. v. OSHRC, supra,* 647 F.2d at 847. This is so because, where a specific action has been mandated by law, the duty of observance is more prominent and categorical—so the level of inattention necessary to establish "indifference" is less. When, however, only a general obligation of safe practices is involved, it must be appreciably clearer, in order to establish willfulness, that the requirements for safety were either known and consciously disregarded, or else not a subject of the employer's concern.

This principle seems to have been acknowledged by the Commission itself. In *Georgia Electric Co. v. Marshall,* 595 F.2d 309 (5th Cir.1979), civil penalties were imposed after a death occurred by reason of the unfortunate confluence of two violations: the erection of a steel light-pole too close to an electrical transmission line, and the reversal of the control levers on a company crane, so that when the lever was pushed in the direction marked "up" the crane would in fact go down. For the former violation, which contravened a specific regulation prohibiting the erection of steel poles within ten feet of transmission lines, the Commission imposed, and the court sustained, a penalty for *willful* violation; for the latter, which was a violation of the general duty clause, the Commission imposed, and the court sustained, a penalty for *serious* violation. The major difference, I believe, was that it was easier to discern "plain indifference" when an explicit directive of the Commission was violated than when a general obligation of safety (whether the obligation to have equipment controls marked properly or the obligation to follow generally accepted industry safety standards) was not complied with.

Here, it seems to me nothing was established except that the employer should have known that the industry standards had not been met (he has plausibly but erroneously claimed, even through this appeal, that they *were* met) and should have taken more effective measures to assure compliance. Ensign-Bickford took steps to design and implement a vacuum collection system and to collect and dispose of the pyrotechnic mix.

Those steps were inadequate, but unless language no longer has any meaning I do not see how "plain indifference" rather than blameworthy negligence (constituting a "serious violation") could have been found.