# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2426

_____

| | | |
|---|---|---|
| McKie Ford, Inc., | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | On Petition for Review |
| | * | of an Order of the |
| | * | Occupational Safety and |
| Secretary of Labor; United States | * | Health Review Commission. |
| Department of Labor; and | * | |
| Occupational Safety and Health | * | |
| Review Commission, | * | |
| | * | |
| Respondents. | * | |

_____

Submitted: June 16, 1999

Filed: September 7, 1999

_____

Before RICHARD S. ARNOLD and ROSS, Circuit Judges, and BYRNE,[1] District
 Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

  This is an appeal from a final order of the Occupational Safety and Health
Review Commission upholding a citation issued to McKie Ford. The citation alleged

_____

  [1]The Hon. William Matthew Byrne, Jr., United States District Judge for the
Central District of California, sitting by designation.

that McKie Ford willfully violated section 5(a)(1) of the Occupational Safety and Health Act, 29 U.S.C. § 654(a)(1), known colloquially as "the general duty clause," by failing to furnish a place of employment free from recognized hazards likely to cause death or serious injury to employees. The citation followed an investigation by OSHA into a workplace accident which resulted in the death of a McKie Ford employee. McKie contested the citation and a hearing was held before an Administrative Law Judge.[2] The ALJ issued a decision and order affirming the citation, and this decision became final when the Commission failed to direct it for review. We affirm.

## I.

In reviewing the Commission's decision, we accept the Commission's factual findings if they are "supported by substantial evidence on the record considered as a whole . . .." 29 U.S.C. § 660(a); See Valdak Corp. v. Occupational Safety and Health Review Comm'n, 73 F.3d 1466, 1468 (8th Cir. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In this case, our review is greatly assisted by a thorough and well reasoned decision. The issues on appeal are the same as those urged below and, for the most part, involve the application of settled legal standards to the facts as found.

McKie Ford owns and operates an automobile dealership in Rapid City, South Dakota. The dealership maintains an inventory of auto parts on two floors and uses a vertical reciprocating conveyor, or freight elevator, to move inventory. The elevator car is three-sided; there is no door, gate, or interlock safety device on the open side. Although the elevator was designed for transporting freight, employees frequently used it rather than taking the stairs. The controls for the elevator are located on the wall next to the elevator on each floor and can be reached from inside the elevator. Once the elevator begins moving, however, there are no controls inside the car with which to

_____

[2]The Hon. Stanley M. Schwartz.

stop or reverse the elevator's movement. This movement created at least two shear points: first, as the elevator floor rose past the ceiling of the first floor, and second, as the elevator ceiling lowered past the floor of the second floor. Don Biegler, a parts department employee who habitually rode the elevator because of his bad knees, was killed when his head was caught in the latter shear point.

## II.

McKie first argues that the ALJ's holding that McKie violated OSHA's general duty clause was not supported by substantial evidence. The clause, found at 29 U.S.C. § 654(a)(1), provides:

> Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

In order to prove a violation of this provision, the Secretary of Labor must show: (1) that the employer failed to render its workplace free of a hazard which was (2) recognized and (3) causing or likely to cause death or serious physical harm. St. Joe Minerals Corp. v. Occupational Safety and Health Review Comm'n, 647 F.2d 840, 844 (8th Cir. 1981) (citing National Realty & Constr. Co. v. Occupational Safety and Health Review Comm'n, 489 F.2d 1257, 1265 (D.C. Cir. 1973)). In this case, the controversy centered on whether the hazard caused by employees riding the freight elevator was "recognized" by McKie. A hazard is deemed recognized when the potential danger of a condition is known to the employer, or generally known in the industry. Id. at 845.

The Commission held that the danger caused by the elevator's unprotected shear points posed a hazard that was recognized by McKie personnel, and there is substantial

evidence in the record to support this determination. In the first place, the configuration of the elevator and the lack of safety features makes the risk plainly obvious. A videotape of the elevator in operation was shown at the hearing and introduced into evidence. There are pictures of the thing in the record, along with descriptions of how it operated. The ALJ heard testimony from six current employees of McKie and three former employees. Not surprisingly, the latter's testimony was more damaging to McKie. It is up to the factfinder who hears the live testimony, and is able to judge the demeanor, and ultimately the credibility, of witnesses to evaluate and credit one version of events over another. For the reasons stated in the ALJ's decision[3] we agree that McKie violated the general duty clause.

## III.

McKie next argues that the Commission erred in upholding the determination that the violation was "willful." McKie insists that this holding relies on an erroneous view of the law and is not supported by specific and detailed evidence. To establish a "willful" violation, there must be evidence of an intentional disregard of, or plain indifference to, the safety requirements of the Act. St. Joe Minerals, 647 F.2d at 846. There must be evidence of aggravating circumstances, apart from mere lack of diligence or adequate care, in order to satisfy the standard. In other words, simply failing to address a recognized hazard will not support a willful violation. The point at which conduct becomes "plainly indifferent" rather than simply negligent defies easy formulation. "An employer need not harbor malicious motives or possess a 'specific intent' to violate a provision of the Act in order to commit a willful violation." Ensign-Bickford Co. v. Occupational Safety and Health Review Comm'n, 717 F.2d 1419, 1423 (D.C. Cir. 1983).

---

[3]Secretary of Labor v. McKie Ford, OSHRC No. 97-0185 (Feb. 19, 1998).

-4-

There is substantial evidence that McKie's conduct demonstrated plain indifference. It had no meaningful safety program. Another employee at McKie had been injured in a similar accident. The workers' compensation claim form, which was filed through the company, described the injury as follows: "cut finger- six stitches on middle finger on right hand- hand caught in freight elevator." J.A. 480 (emphasis supplied). Despite this prior accident, which the ALJ permissibly found was known to the company, employees kept riding the freight elevator habitually for years. The company did nothing of substance to prevent this dangerous practice. We think characterizing this course of conduct as plain indifference is a permissible application of the law.

IV.

McKie's final argument is that the OSH Administration should be bound by a written settlement agreement signed by the OSHA Area Director, Bruce Beelman, and sent to McKie. The settlement would have characterized the violation as "serious" rather than "willful" – a lesser offense, so to speak. A cover letter stated:

> As a result of discussions . . . concerning the OSHA inspection of McKie Ford . . . the parties have reached a tentative agreement. . . . Attached to this letter is a written document reflecting the agreement. The document has been signed and dated by the Area Director and requires the signature of an authorized company official to make the agreement binding upon the company.

J.A. 406. The agreement itself, entitled "Informal Settlement Agreement," provides that "[t]he employer, by signing this informal settlement agreement, hereby waives its right to contest the above citation(s)." Id. at 408. Before McKie signed the document, Beelman contacted McKie by telephone and orally rescinded the offer. It is, of course, well settled that a party may revoke an offer before acceptance. McKie claims, however, that the document was merely the written reflection of an oral agreement

reached by the parties during a settlement conference in which there was an offer and acceptance of the terms, later embodied in the writing. McKie seeks to bind OSHA to the terms of this agreement and stands ready to execute the document.

The Commission held that the agreement never became binding. The consideration of settlement agreements in OSH proceedings is governed by 29 C.F.R. § 2200.100. The regulations contain several procedural requirements relating to the filing and posting of the settlement agreement in order to provide notice to affected employees. Although nothing in the regulations specifically requires that a settlement agreement be in writing, the Review Commission has previously held:

> We therefore conclude that a written settlement agreement is necessary in order to effectuate the service and notice requirements of Commission Rule 100(c). For this reason, we now hold that a settlement agreement between the Secretary and an employer must be reduced to writing and signed by those parties and that the Commission will not consider any settlement agreement that is not submitted in this form.

Secretary of Labor v. Consolidated Aluminum Corp., 9 O.S.H. Cas. (BNA) 1144, 1154 (Review Comm'n 1980). We agree with the Commission's reasoning. Until the agreement is in a form consistent with the provisions and objectives of the regulations, it cannot be approved. Thus, the oral agreement McKie relies on was of no effect, and the offer, contained in the written proposal, was revoked before acceptance. We note, in addition, that the covering letter itself described the oral agreement as "tentative."

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.