Peter J. **BRENNAN**, Secretary of Labor, Petitioner,

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION**, and **Vy Lactos Laboratories, Inc.**, Respondents.

No. 73-1235.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1973.

Decided April 5, 1974.

Michael H. Stein, Atty., Dept. of Justice, Washington, D. C., for petitioner.

Thomas A. Finley, Des Moines, Iowa, for respondents.

Before MEHAFFY, Chief Judge, MOORE,* Senior Circuit Judge, and WEBSTER, Circuit Judge.

MEHAFFY, Chief Judge.

The Secretary of Labor has petitioned this court to review the decision of the

---

* The Honorable LEONARD P. MOORE, Senior Circuit Judge, Second Circuit, sitting by designation.

Occupational Safety and Health Review Commission in Vy Lactos Laboratories, Inc., OSHRC Dock. No. 31 (Feb. 21, 1973). The decision in question affirmed, but on different grounds, a hearing examiner's report and order that had vacated a citation and proposed penalty issued by the Secretary to Vy Lactos for an alleged serious violation of the Occupational Safety and Health Act's general duty clause, 29 U.S.C. § 654(a)(1). The Secretary argues that the Commission's decision is based on an erroneous construction of the general duty clause and that we should therefore reverse the decision and reinstate the citation and proposed penalty. For the reasons stated below, we agree that the Commission's decision must be reversed, but on the basis of the record before us we feel compelled to remand the matter for further administrative proceedings.

## I. The Incident.

Respondent Vy Lactos Laboratories is an interstate manufacturer of animal feed concentrates. In the course of the manufacturing process at its Des Moines, Iowa plant Vy Lactos utilizes proteinaceous fish solubles. These fish solubles, which consist of the "innards and guts" of fish, are received in a liquid "slurry" form that is treated with sulfuric acid to retard decomposition. The slurry is stored in tanks in the basement of the plant.

On the evening of July 15, 1971 a truck delivered a full load of fish slurry into one of the basement tanks of the Vy Lactos plant in Des Moines. The tank overflowed into an adjacent room in the basement and filled it to a depth of 31 inches. When the overflow was discovered the next morning, a hose was inserted and the slurry pumped out until a depth of three or four inches remained. Employees of Vy Lactos were then directed to enter the basement room in order to clean up the remaining slurry and repair some pumps that had been submerged under the overflow. The employees who entered the basement were almost immediately overcome, apparently by hydrogen sulfide gas, as were those who tried to come to their assistance. Vy Lactos had no emergency breathing apparatus available in the plant and had taken no safety precautions to cope with accumulations of hydrogen sulfide gas. The men who had been overcome were extricated by the fire department rescue squad. Ultimately three of the employees died and two were seriously injured.

## II. The Hearing Examiner's Report.

After an inspection and investigation of the foregoing incident the Secretary issued Vy Lactos a citation for a serious violation of the general duty clause of the Occupational Safety and Health Act, 29 U.S.C. § 654(a)(1), and assessed a proposed penalty of $750.00. Vy Lactos contested the citation and proposed penalty, and a hearing was subsequently held before an OSHRC hearing examiner. At the hearing the Secretary proceeded on the theory that the lethal accumulation of hydrogen sulfide gas was the foreseeable result of natural decomposition of the fish slurry. Vy Lactos, on the other hand, based its proof on the theory that the hydrogen sulfide gas had been produced by a reasonably unforeseeable chemical reaction between the acid in the slurry and iron sulfide particles that allegedly dropped from the ceiling when an employee cut an emergency ventilation hole into the basement room from the floor above with a welding torch.

The report and decision of the hearing examiner basically adopted Vy Lactos's welding-chemical reaction theory of the incident and dismissed the citation and proposed penalty. The statutory rationale used by the hearing examiner was expressly based on section 17(k) of the Act, 29 U.S.C. § 666(j), which provides that no serious violation of the Act shall be deemed to exist where:

* * * the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

■■ The hearing examiner's use of section 17(k) of the Act as the sole basis for dismissing the citation and proposed penalty has two basic weaknesses. First, the provisions of section 17(k) relate only to determinations involving *serious* violations of the Act. In addition to serious violations (which must be penalized by a fine of up to $1,000.-00), the Act also provides that an employer may be cited for de minimis violations (which carry no penalty) and for "violations" simpliciter (which may be penalized by a fine of up to $1,000.-00). Thus the hearing examiner's section 17(k) rationale is irrelevant to any determination of whether or not the Secretary had established a violation, de minimis or simpliciter. The second basic weakness of the hearing examiner's rationale is that it addresses itself to the foreseeability of the incident as it actually occurred rather than the foreseeability of the general hazard of hydrogen sulfide accumulations. Neither the general duty clause nor section 17(k) requires any actual death or physical injury for a violation to occur. A violation occurs whenever an employer fails to take reasonable precautionary steps to protect his employees from reasonably foreseeable "recognized hazards" that are causing or *are likely to cause* death or serious physical injury. Thus, even if the three deaths and two serious injuries involved here were actually the result of an unforeseeable chemical reaction, Vy Lactos may still have been in violation of the general duty clause because of its self-admitted failure to take any precautionary steps whatsoever to protect its employees from the hazard of hydrogen sulfide accumulations that is now apparent.

## III.  The Review Commission Decision.

Pursuant to the provisions of 29 U.S. C. § 661(i) Commissioner Burch directed review of the hearing examiner's decision before the full Commission. Although the Commission affirmed, by a vote of two to one, the result reached by the hearing examiner, it expressly refrained from reliance on the hearing examiner's section 17(k) rationale. Instead, the Commission majority addressed itself to the threshold issue of whether or not the general hazard of hydrogen sulfide accumulation was a recognized hazard for purposes of the general duty clause.

■ The Commission majority was of course correct in concluding that the Secretary had to prove, as an essential element of his case, that the hazard involved was recognized. In formulating the Secretary's burden on this issue, however, the Commission majority clearly indicated it felt that proof of actual knowledge on the part of Vy Lactos of the conditions and of their hazardous nature was not enough. As the majority stated it:

> [T]he question under section 5(a)(1) [the general duty clause] is not whether Respondent personally recognized the hazard. Rather, the question is whether the hazard is recognized by the industry of which Respondent is a part.

Majority opinion at 5.

Commissioner Burch, in his dissent, vigorously attacked the majority's conclusion that an employer's actual knowledge of a hazard was insufficient to make that hazard recognized for purposes of the general duty clause. Commissioner Burch's opinion then went on to examine the Secretary's evidence and concluded that a serious violation had been established.

## IV.  The Issue on Appeal.

In the early stages of this appeal it appeared that the key issue would be whether or not an employer's actual knowledge of a hazard would make that hazard "recognized" for purposes of the general duty clause. In oral argument, however, Vy Lactos conceded that actual knowledge of a hazard on the part of an

employer would satisfy the general duty clause requirement of recognition.[1]

■ Although this issue would have been one of first impression, it is understandable that respondent so willingly conceded the point. Even a cursory examination of the Act's legislative history clearly indicates that the term recognized was chosen by Congress not to exclude actual knowledge, but rather to reach beyond an employer's actual knowledge to include the generally recognized knowledge of the industry as well.

In conceding the statutory construction issue Vy Lactos did not concede the outcome of this appeal. Assuming that actual knowledge does satisfy the recognition requirement, Vy Lactos argues quite strenuously that the Secretary failed to establish that respondent did in fact have actual knowledge of the hazard before the incident occurred. The Secretary, on the other hand, contends that he established actual knowledge by undisputed evidence. Unfortunately, our review of the record indicates that neither party has conclusively established its case on actual knowledge.

The record does reflect that Vy Lactos utilized proteinaceous fish solubles in its manufacturing process. The record also reflects that Vy Lactos stored the fish solubles and other ingredients in tanks in the basement. The record reveals that Vy Lactos knew that occasional overflows of some sort of material from these tanks into the adjacent basement room had occurred. From the record it is also clear that Vy Lactos had been informed by employees of certain infrequent but highly malodorous and physically irritating conditions in the basement room. Finally it is clear that Vy Lactos's chemist knew that the proteinaceous fish solubles were subject to natural decomposition, that the decomposition process would produce hydrogen sulfide gas, and that hydrogen sulfide gas in sufficient concentration poses a serious hazard of death or physical injury.

■ On the basis of the foregoing facts and the remainder of the record, either the hearing examiner or the Review Commission might well have been able to conclude as a finding of fact that Vy Lactos had actual knowledge of the hazard of hydrogen sulfide accumulation before the incident occurred. Such a finding of fact has not been made, however, by anyone except Commissioner Burch in his dissent. Neither the facts described above nor the remainder of the record establishes the presence or absence of actual knowledge on the part of Vy Lactos as a legal certainty; and this court is powerless to supply the inferences necessary to conclude the factfinding process. It follows that we must remand this case to the Commission for further factfinding proceedings.

*V. Conclusion.*

In summary we hold that the Commission erred to the extent that it ignored the Secretary's evidence of actual knowledge in determining whether or not the hazard involved here had been recognized. We further hold that the record before us is insufficient to conclusively establish either the presence or absence of actual knowledge on the part of Vy Lactos of the hazard. We therefore are compelled to remand this case to the Commission for further factfinding proceedings.

The decision and order of the Occupational Safety and Health Review Commission is reversed, and the matter is remanded for further proceedings not inconsistent with this opinion.

1. The concession is most clearly evidenced by the following exchange:

Judge Moore: Mr. Finley [counsel for Vy Lactos], when you use the word recognized, doesn't that imply recognized by someone? Now by whom do you say it should have been recognized?

Mr. Finley: Alright, I have stated that under the Act the term is construed as "recognized hazard in the industry." Also the commission went on and also said "or recognized by the general public." Also I believe that it's probably clear * * * [that] if there is actual knowledge on the part of the employer, I also believe that would take out any consideration as to recognized hazard * * *