**MAGMA COPPER COMPANY,
Petitioner,**

v.

**Ray MARSHALL, Secretary of Labor,
and Occupational Safety and Health
Review Commission, Respondents.**

**No. 78–2112.**

United States Court of Appeals,
Ninth Circuit.

Nov. 14, 1979.

Rehearing Denied Jan. 28, 1980.

N. Douglas Grimwood, Twitty, Sievwright & Mills, Phoenix, Ariz., for petitioner.

Allen H. Feldman, Laura V. Fargas, Washington, D. C., for respondents.

Before CHAMBERS, WALLACE and TANG, Circuit Judges.

CHAMBERS, Circuit Judge:

Magma Copper Company petitions this Court to review the decision of the Occupational Safety and Health Review Commission (OSHRC), finding Magma guilty of a serious violation of Section 5(a)(1) of the Occupational Safety and Health Act, 29 U.S.C. § 654(a)(1). This general duty provision of the Act provides that each employer subject to the Act,

"shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."

More specifically, the charge of the citation was that Magma had failed, at Boiler No. 6 at its copper smelter:

"... to provide safeguards against interconnection of other systems with the liquid oxygen system in that pneumatic powered tools could be connected to the liquid oxygen system creating an explosion hazard."

The citation was issued following an investigation of an accident on January 2, 1977. Two employees had been using pneumatic chipping guns to clean the interior of a boiler when one of the guns was found to be defective. A foreman went to the place where its power supply was attached to the built-in plant system and secured the power.[1] He then obtained a replacement gun and gave it to one of the employees, attaching it to the same power hose. When the replacement gun was activated, residual hydrocarbons in the hose came into contact with the pure oxygen and exploded. Later it was learned that an employee on an earlier shift had mistakenly connected the hose to the oxygen supply, an inadvertence that the foreman had failed to notice.

The accident had occurred despite safety precautions taken by Magma. The oxygen system had been installed at a distance (some 25 to 30 feet) from the compressed air system. Color coding was used to distinguish the oxygen system (green) from the compressed air system (red). In addition, there was a green oxygen warning sign posted about six to eight inches from the oxygen outlet and lighting in the area was very good. The employees were wearing the prescribed safety apparel and there

was no OSHA charge that they were insufficiently trained in safety matters.

The citation proceeded on the assumption that despite these existing precautions, the lack of noninterchangeable fittings on the power supply hoses created an explosion hazard, and this constituted a violation of the Act. The pivotal question raised by the appeal is whether the Secretary carried his burden of proving a serious violation of the general duty provision of the Act. The Secretary claims that this burden was carried and that there was substantial evidence that 1) "the employer failed to render the workplace 'free' of a hazard which was, 2) 'recognized', and 3) 'causing or likely to cause death or serious physical harm.' " *National Realty and Construction Co. v. OSHRC*, 160 U.S.App.D.C. 133, 141, 489 F.2d 1257, 1265 (D.C.Cir.1973); accord *Titanium Metals Corp. v. Usery*, 579 F.2d 536, 540 (9th Cir. 1978). Of these three aspects of the Secretary's burden of proof, the issue of recognition of the hazard dominates the appeal.

■ The Secretary sought to prove by expert testimony that explosions due to the lack of noninterchangeable hose fittings in the oxygen system was a "recognized" hazard. But as Magma points out, the Secretary's expert witness had no experience in the smelting or refining industry but testified primarily about the use of portable oxygen units in hospitals and in welding work. The likelihood of inadvertent connection would, of course, be far greater with portable systems than with the bulk type systems such as that in use at the Magma smelter. It was stipulated by the parties that evidence produced by the Secretary did not apply directly to a shop or plant system; it was offered only "by analogy." The administrative law judge (and now the Secretary) states that noninterchangeable hose fittings are recognized as

1. The administrative law judge found that "Magma's plant oxygen system consisted of two liquid oxygen storage tanks and associated piping systems to deliver the oxygen through-

out the smelter. Regulators located on the lines reduced the oxygen pressure from 200 pounds psi to a service pressure of 90 psi in the plant system lines."

necessary "in industry" or "in general industry." But Magma's conduct (particularly in view of the nature of the hazard with which it was charged) must be judged against the standards of a relevant industry. *Brennan v. Smoke-Craft, Inc.*, 530 F.2d 843, 845 (9th Cir. 1975). There was no expert evidence introduced by the Secretary as to the practice in the smelting or refining industry, the industry of which Magma is a part. By relying on what is done in hospitals or in welding shops with portable oxygen cylinders, the administrative law judge (and now the Secretary) stretches the analogy too far. There is not substantial evidence in this record to support the secretary's claim that it carried its burden by expert testimony.

■ Other evidence was introduced which the Secretary claims demonstrates that the hazard was "recognized" under the *National Realty* test. He argues, and correctly so, that proof of an employer's actual knowledge of a hazard is sufficient to prove that the hazard was "recognized." *Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 910 (2nd Cir. 1977); *Brennan v. OSHRC*, 494 F.2d 460, 464 (8th Cir. 1974); see *Titanium Metals Corp. v. Usery*, supra.

The evidence to which the Secretary points is that on December 23, 1976, Magma decided to use only green hoses with the oxygen system and to install noninterchangeable fittings on its oxygen system power lines. This was done based on its admitted knowledge that oxygen lines tended to rupture when the oxygen came into contact with residual hydrocarbons in the hoses. Magma argues that this should not be equated with knowledge that existing safety precautions were insufficient. Its position is that within its industry, the color coding system, the signs, and the planned

distance between the different systems, constituted an adequate safety system, and that it was the Secretary's burden to demonstrate that the industry would have deemed the safety system inadequate. *Cape & Vineyard Div. v. OSHRC*, 512 F.2d 1148, 1152 (1st Cir. 1975), and this Court's decision in *Brennan v. Smoke-Craft, Inc.*, supra, do require the Secretary to carry such a burden, using a standard of a "reasonably prudent man familiar with the circumstances of the industry." More recently, *General Dynamics Corp. v. OSHRC*, 599 F.2d 453, (1st Cir. 1979) refined the *Cape & Vineyard Div.* standard, to require testimony of what a "reasonably conscientious safety expert" would believe was sufficient in the industry.

Both *Cape & Vineyard Div. v. OSHRC* and *Brennan v. Smoke-Craft, Inc.*, considered a "specific" OSHA standard dealing with personal protective clothing and equipment, 29 C.F.R. § 1910.132(a). That C.F.R. section, by its own terms,[2] required a showing that the safety clothing and equipment was "necessary" in the circumstances. But the wording of that section is so general that the First Circuit was concerned over the lack of specificity and thus the lack of notice to the employer:

"A regulation without ascertainable standards, like this one, does not provide constitutionally adequate warning to an employer unless read to penalize only conduct unacceptable in light of the common understanding and experience of those working in the industry." *Cape & Vineyard Div. v. OSHRC*, supra, at 1152.

■ To assure that constitutional safeguards were provided, the First Circuit adopted the objective standard, saying it was patterned on the objective standard employed in cases dealing with the general

2. 29 C.F.R. § 1910.132(a) states:

"Protective equipment, including personal protective equipment for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact."

duty clause of Section 654(a)(1) of Title 29. *Cape & Vineyard Div. v. OSHRC*, supra at 1152, fn.5. The problem presented, whether under the specific OSHA standard on safety clothing, or under the general duty provision, is thus very similar. We have the same concern here as the court had in *Cape & Vineyard Div. v. OSHRC*, that there must be adequate warning to an employer, before he is charged with actual knowledge, and violation of the Act based on that actual knowledge. Where evidence of the employer's actual knowledge is relied on as proof that a hazard is "recognized," under the general duty provision of the Act, the Secretary has the burden of demonstrating by substantial evidence that the employer's safety precautions were unacceptable in his industry, or a relevant industry. We adopt the *General Dynamics Corp. v. OSHRC* standard of a reasonably conscientious safety expert familiar with the pertinent industry.[3] There is no evidence of that sort here.[4]

We decline to enforce the order.

---

**3.** In other situations, involving other hazards and other industries, it may be demonstrated that the industry standards are impermissibly low and, as such, are less than the standards to which the employer will be held. *See Cape & Vineyard Div. v. OSHRC*, supra at 1152. There was no such demonstration here.

**4.** Having come to this conclusion, we do not address the question of the employer's duty to eliminate only those hazards that are "foreseeable and preventable." *National Realty Construction Co. v. OSHRC*, supra, 160 U.S.App. D.C. at 141–2, 489 F.2d at 1265–7; *California Stevedore and Ballast Co. v. OSHRC*, 517 F.2d 986 (9th Cir. 1975). Or, as stated in *Brennan v.*

*OSHRC*, 511 F.2d 1139, 1145 (9th Cir. 1975), the employer's duty under the general duty clause "must be one which is achievable." We note that in this case, on the evidence presented, Magma probably had no actual knowledge prior to December 23, 1976—only 10 days before the accident. By December 29th Magma had begun replacing noninterchangeable hose fittings with specially adapted noninterchangeable ones, and conversions had been made throughout the plant, except in the area of the accident, by January 2 when the employees were injured. All conversions were completed a day or two later.