**ST. JOE MINERALS CORPORATION, d/b/a St. Joe Lead Co.—Smelting Division, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Ray Marshall, Secretary of Labor, United States Department of Labor, Respondents.**

No. 79–1873.

United States Court of Appeals, Eighth Circuit.

Submitted May 23, 1980.

Decided May 6, 1981.

Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Counsel for Appellate Litigation, John A. Bryson, Asst. Counsel for Appellate Litigation, James Culp (argued), U.S. Dept. of Labor, Washington, D. C., for respondents.

Robert G. Brady, Thomas C. Walsh (argued), Kathleen R. Sherby, St. Louis, Mo., for petitioner.

Before LAY, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Petitioner, St. Joe Minerals Corporation (St. Joe) seeks review, pursuant to 29 U.S.C. § 660(a), of a decision of the Occupational Safety and Health Review Commission holding that St. Joe willfully violated § 5(a)(1) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 654(a)(1). We grant the petition in part and remand for further proceedings consistent with this opinion.

The present controversy stems from an August 9, 1978 accident involving a freight elevator at St. Joe's lead smelting plant at Herculaneum, Missouri. The freight elevator was located in the blast furnace area of the plant. It was used, in part, to carry dross, a by-product of the smelting process, from the first floor to the furnace on the third floor of the plant.

The elevator was equipped with standard safety devices. It had two sets of doors; an inside door to prevent egress from the elevator car during operation, and an outside door to protect against entrance into the elevator shaft when the elevator was not present on the landing. The elevator also had an interlock or electrical safety system. This system rendered the elevator inoperative unless all doors and gates were closed. In this way, the interlock system prevented the elevator from ascending or descending while any person or equipment was not completely inside the elevator and protected persons from falling into the elevator shaft.

The interlock device, however, could easily be "bypassed," i. e., the electrical circuitry could be altered to permit the elevator to operate without having all doors closed. The record shows that St. Joe used this procedure when the elevator malfunctioned. While the interlock system was inoperative, an alternative safety measure was implemented. An employee was assigned to open and close the elevator doors and to operate manually a stop button which would immobilize the elevator.

On the evening of August 8, 1978 the elevator door fell off its track, triggering the interlock system and causing the elevator to become inoperative. Larry Pettus, the head foreman in the blast furnace area, called Billy Boedecker, a St. Joe electrician, to repair the elevator. Instead of making the repairs, Boedecker, apparently on his own initiative, chose to bypass the interlock system so that the elevator could operate despite the problem with the elevator door. Boedecker informed a foreman in the blast furnace area that he had placed a "bypass jumper" on the elevator door.

Sometime after learning of the bypass, Larry Pettus telephoned Boedecker and told him to remove the bypass jumper from the interlock device before the end of the evening shift. Boedecker, however, never returned to the blast furnace area to remove the bypass nor informed Pettus or the other foremen that the bypass remained in place.

Nevertheless, during the evening shift on August 9, 1978, Larry Pierce, a laborer, was assigned to ensure that the doors were closed during movement of the elevator and to operate the stop button while Mark Ashe and Bob Coplin hauled loads of dross up to the third floor. The accident occurred as Coplin was driving off the elevator and Ashe was driving onto the elevator with another load of dross. Pierce was assisting Ashe with the elevator doors. As Ashe drove the front two wheels of his vehicle called a "bobcat" onto the elevator, the elevator began ascending; the movement caused the bobcat to overturn with the load of dross. Ashe fell into the elevator shaft and died from his injuries.

Following the accident, the Secretary of Labor issued a citation to St. Joe alleging that the company had violated section 5(a)(1) of the Act, commonly known as the "general duty clause." [1] The citation charged that:

1. Section 5(a) of the Act, 29 U.S.C. § 654(a) provides:
 (a) Each employer—

 (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that

The employer did not furnish employment and a place of employment which were free from recognized hazards that were causing or likely to cause death or serious physical harm to employees in that: (a) Electrical protective devices (door switches and gate interlocks) of the Blast Furnace freight elevator were electrically bypassed (jumped) and rendered inoperative thereby permitting the freight elevator to operate or be operated with the doors and gates open.

The Secretary alleged that the violation was willful and proposed assessment of the maximum statutory penalty of $10,000.00.[2]

St. Joe filed a notice of contest, pursuant to 29 U.S.C. § 659(a), and the matter was heard before an administrative law judge. On July 22, 1979 the ALJ entered his decision affirming the citation and penalty. The Commission denied St. Joe's petition for discretionary review of the ALJ's decision. On August 23, 1979 that decision became a final order pursuant to 29 U.S.C. § 661(i).

On petition to this court seeking review of the Commission's decision, St. Joe contends that the Commission erred in (1) permitting the Secretary to amend his complaint after the hearing had begun; (2) holding that the evidence supported a finding that St. Joe violated the general duty clause; and (3) holding that the violation was willful.

*Secretary's Amendment of the Complaint.*

In the course of the first day of the hearing, the Secretary moved orally to amend the complaint to charge that the company had violated the Act "on or about August 9, 1978 and times prior thereto."[3] The complaint originally had charged a violation "on or about August 9, 1978." St. Joe objected to the Secretary's motion and requested a continuance. The ALJ granted leave to amend the complaint but also granted a continuance to permit St. Joe to prepare a defense to the amended complaint. The petitioner subsequently waived the continuance.

St. Joe now contends that the ALJ erred in permitting the Secretary to amend his complaint. St. Joe argues that the amendment was beyond the scope of Federal Rule of Civil Procedure 15(b)[4] as well as contrary to section 9(c) of the Act, 29 U.S.C. § 658(c).[5]

---

are causing or are likely to cause death or serious physical harm to his employees;

(2) shall comply with occupational safety and health standards promulgated under this chapter.

2. The Act provides three levels of civil penalties for violations of the general duty clause or specific safety regulations. (1) For a violation "not of a serious nature" a penalty of up to $1,000.00 may be assessed. 29 U.S.C. § 666(c). (2) A "serious" violation is one likely to cause death or serious physical harm to an employee, 29 U.S.C. § 666(j), and a penalty of up to $1,000.00 shall be assessed. 29 U.S.C. § 666(b). (3) A "willful" or "repeated" violation may bring a penalty of up to $10,000.00. 29 U.S.C. § 666(a).

The Act also provides that a criminal fine of up to $10,000.00 or imprisonment for up to six months may be imposed if a willful violation of any specific regulation results in the death of an employee. This provision does not apply to violations of the general duty clause. 29 U.S.C. § 666(e).

3. The Secretary's written amendment charged violations of the Act "on or about August 9, 1978 and for a period of four years prior thereto."

4. Fed.R.Civ.P. 15(b) provides in relevant part:

When the issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

The Federal Rules of Civil Procedure are made applicable to Commission proceedings under 29 U.S.C. § 661(f).

5. Section 9(c) provides:

No citation may be issued under this section after the expiration of six months following the occurrence of any violation.

29 U.S.C. § 658(c).

844

■ These arguments are without merit. First, we note that Rule 15(b) permits any party to amend his pleadings to conform to the evidence, and to raise issues which were tried by the express or implied consent of the parties. Consent may be implied when evidence relevant to an unpleaded issue has been introduced at trial without objection. *Mineral Industries & Heavy Constr. Group v. OSHRC*, 639 F.2d 1289, 1292–93 (5th Cir. 1981); *Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 906 (2d Cir. 1977). We believe it is plain that St. Joe impliedly consented to the amendment here. For example, testimony by Donald Gebhard and Earl Brown that bypasses had been used on the elevator at times prior to August 9, 1978 was admitted without objection.

■ Even given facts suggesting implied consent, amendment of the pleadings should not be permitted where it would operate to deny a party fair opportunity to present evidence material to newly added issues. *Mineral Industries*, 639 F.2d at 1293. St. Joe, however, alleges no prejudice resulting from the amendment which could not have been cured by a continuance. *See, id.; Duane Smelser Roofing Co. v. Marshall*, 617 F.2d 448, 449 (6th Cir. 1980). In such circumstances, we believe that the ALJ was not prohibited by Fed.R.Civ.P. 15(b) from granting leave to amend.

■ We also note that the Secretary's amendment was not barred by the six month limitations period in section 9(c) of the Act, 29 U.S.C. § 658(c). Although the written amendment alleged violations over a four year period, the ALJ limited his findings to conduct which occurred within the six month period. The ALJ considered acts prior to the six month period only in determining whether the violation was willful. *See Georgia Electric Co. v. Marshall*, 595 F.2d 309, 320 (5th Cir. 1979).

In sum, we conclude that the ALJ properly limited the scope of the violation charged in the amended complaint and that petitioner suffered no prejudice from the amendment.

*Violation of Section 5(a)(1).*

Petitioner also urges that the Commission erred in holding that St. Joe violated section 5(a)(1) of the Act, the general duty clause. We find substantial evidence to support the Commission's determination and affirm.

To establish a violation of the general duty clause, "the Secretary must prove (1) that the employer failed to render its workplace 'free' of a hazard which was (2) 'recognized' and (3) 'causing or likely to cause death or serious physical harm.'" *National Realty & Constr. Co., Inc. v. OSHRC*, 489 F.2d 1257, 1265 (D.C.Cir.1973). *See also Empire-Detroit Steel v. OSHRC*, 579 F.2d 378, 383 (6th Cir. 1978); *Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 909 (2d Cir. 1977).

■ To prove that the employer failed to render its workplace "free" of hazard, the Secretary may be required to "specify the particular steps a cited employer should have taken to avoid citation, and to demonstrate the feasibility and likely utility of those measures." *National Realty*, 489 F.2d at 1268. *See also Babcock & Wilcox Co. v. OSHRC*, 622 F.2d 1160, 1164 (3d Cir. 1980); *Empire-Detroit Steel*, 579 F.2d at 384. Petitioner here contends that the Secretary failed to suggest a feasible means to abate the hazard. Moreover, St. Joe urges that its practice of providing an employee to operate the elevator manually was a reasonably safe and feasible alternative.

■ Although St. Joe may have acted in good faith in adopting this alternative procedure, it did not eliminate the danger to employees. Testimony indicated that the risks of accident increased when the interlock system was inoperative, in part due to the enhanced possibility of human error. The employer's better alternative, as suggested in the record, was to fully repair or replace malfunctioning equipment. On balance, we cannot say the Commission erred in finding that petitioner's efforts failed to free its workplace from hazard.

Petitioner also contends that the Secretary did not prove the existence of a "recognized" hazard. A hazard is deemed "recognized" when the potential danger of a condition or activity is either actually known to the particular employer or generally known in the industry. *Marquette Cement*, 568 F.2d at 910; *Brennan v. OSHRC (Vy Lactos Laboratories)*, 494 F.2d 460, 463–64 (8th Cir. 1974). We believe the record supports the finding that St. Joe had both actual and constructive knowledge [6] of the danger of operating its freight elevator with the interlock system bypassed. St. Joe supervisory personnel had been warned by an independent elevator engineering firm and at least one St. Joe electrician that bypassing increased the risk of an elevator accident.[7] In addition, there was evidence that operation of a freight elevator without

interlocks was considered a hazard in the elevator industry.[8]

In brief, we find substantial evidence in the record to support the Commission's finding that St. Joe failed to render its workplace free of a recognized hazard causing or likely to cause death or serious physical harm.[9]

*Willful Violation of the General Duty Clause.*

Although we have found a violation of the general duty clause, we conclude that there is not substantial evidence to support the charge that the violation was willful. We vacate that portion of the order and remand.

Willful violation is nowhere defined in the Act, and the legislative history is sketchy.[10] Thus, the Commission and the courts are charged with determining the

---

6. Proof that the employer had actual knowledge of a hazard, even absent a showing that the hazard is recognized in a relevant industry, is sufficient to establish a "recognized hazard" under section 5(a)(1). *Marquette Cement*, 568 F.2d at 910.

7. St. Joe maintains that, because no previous elevator accidents occurred, it lacked actual knowledge of the hazardous condition. We believe, however, that St. Joe had sufficient notice of the hazard to constitute actual knowledge, even without a prior accident. In the circumstances, to hold otherwise would be contrary to the Act's goal of preventing even the first accident. *See Lee Way Motor Freight, Inc. v. Secretary of Labor*, 511 F.2d 864, 869–70 (10th Cir. 1975); *Brennan v. OSHRC (Vy Lactos Laboratories)*, 494 F.2d 460, 463 (8th Cir. 1974).

8. An engineer with expertise in elevator safety testified that the operation of a freight elevator without safety interlocks was a recognized hazard in the *elevator industry* and contrary to the Safety Code of the American National Standards Institute (ANSI). St. Joe contends that: (1) only evidence of hazards recognized in the *lead smelting industry* is relevant; and (2) the ANSI code is advisory only and has not been adopted by any applicable regulatory authority.

The expert testimony was properly admitted to establish the standards of "a relevant industry." *See Magma Copper Co. v. Marshall*, 608 F.2d 373, 375–76 (9th Cir. 1979). Petitioner, of course, was free to offer contrary evidence regarding elevator standards in the lead smelting industry and to suggest, as it did, that the Secretary's evidence lacked probative value.

We agree with the ALJ that the evidence in question was worthy of some weight.

9. Petitioner does not dispute that the third element of the test was established. There was expert testimony regarding the potential for serious injury as well as evidence of the accident which killed employee Ashe.

10. The Senate bill originally provided only criminal penalties for a willful violation. S.Rep.No.91–1282, 91st Cong., 2d Sess. at 35, *reprinted in* [1970] U.S.Code Cong. & Ad.News 5177, 5212. The House amendment provided for a civil penalty of up to $10,000.00 for willful or repeated violations. H.R.Rep.No.91–1291, 91st Cong., 2d Sess. at 9 (1970). The conference committee adopted the House provision on civil penalties and the Senate provision on criminal penalties as amended. Conf.Rep.No. 91–1765, 91st Cong., 2d Sess. at 41, *reprinted in* [1970] U.S.Code Cong. & Ad.News 5228, 5237–38.

The only indication in the legislative history of the meaning of "willful" is the statement that

Other than willful violations, the violator's intent should not be a pertinent factor in the original assessment of penalties where there is a failure to comply with standards and regulations.

H.R.Rep.No.91–1291, at 26. This passage lends inferential support to the contention that it is the violator's intent which distinguishes a willful violation from a serious violation. *See George Hyman Constr. Co. v. OSHRC*, 582 F.2d 834, 839–40 & n.11 (4th Cir. 1978) (Lay, J.). See also note 17 *infra*.

meaning of willfulness in light of the policy and framework of the Act.[11]

The Commission and the Secretary of Labor have interpreted a willful violation to be "an act done with either an intentional disregard of, or plain indifference to, the Act's requirements." We adopted this definition in *Western Waterproofing Co., Inc. v. Marshall*, 576 F.2d 139 (8th Cir.), *cert. denied*, 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1978).[12] In that case we affirmed the Commission's conclusion that the employer had willfully violated the Act by disregarding specific scaffolding standards known to management personnel. We noted that

[employer's] officials substituted their own judgment for the provisions of the standards and therefore cannot escape the conclusion that they acted voluntarily with either intentional disregard of or plain indifference to, the requirements of the Act. The regulations allow no such unbridled discretion.

*Id.* at 143.

In the present case, however, the employer is charged not with a willful violation of a specific OSHA safety standard,[13] but with a willful violation of his duty to provide a, safe workplace.[14] A reasoned application of

---

11. The legislative history reflects a tension between the stated goal of promoting safe working conditions and the recognized limitation that the Act does not impose strict liability.
 In the words of the House Report:
 The general duty clause is necessary in order to encourage compliance with the Congressional intent set forth in Section 2(b) [29 U.S.C. § 651(b)], "To assure as far as possible every working man and woman in the nation safe and healthful working conditions."
 [T]his clause enables the Federal Government to provide for the protection of employees who are working under such unique circumstances that no standard has yet been enacted to cover this situation.
 H.R.Rep.No.91–1291 at 21–22 (emphasis in original).
 The House Report also notes, however, that:
 An employer's duty under Section 5(1) is not an absolute one. It is the Committee's intent that an employer exercise care to furnish a safe and healthful place to work and to provide safe tools and equipment. This is not a vague duty but is protection of the worker from preventable dangers.
 *Id.* at 21.

12. A majority of the circuits have adopted this definition or a similar one. *See, e. g., National Steel & Shipbuilding Co. v. OSHRC*, 607 F.2d 311, 313–16 (9th Cir. 1979); *Georgia Electric Co. v. Marshall*, 595 F.2d 309, 317–19 (5th Cir. 1979); *Kent Nowlin Constr. Co. v. OSHRC*, 593 F.2d 368, 372 (10th Cir. 1979); *Empire-Detroit Steel v. OSHRC*, 579 F.2d 378, 384–85 (6th Cir. 1978); *Intercounty Constr. Co. v. OSHRC*, 522 F.2d 777, 779–81 (4th Cir. 1975), *cert. denied*, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976); *F. X. Messina Constr. Corp. v. OSHRC*, 505 F.2d 701, 702 (1st Cir. 1974).

13. We emphasize the need for formulation of specific safety standards through administrative rulemaking rather than by means of ad hoc adjudication. *See R. L. Sanders Roofing Co. v.*

*OSHRC*, 620 F.2d 97, 100–01 (5th Cir. 1980). Particularly where the employer may face substantial penalties, he is entitled to fair notice of the proscribed conduct "and a reasonably clear standard of culpability to circumscribe the discretion of the enforcing authority and its agents." *Diamond Roofing Co., Inc. v. OSHRC*, 528 F.2d 645, 649 (5th Cir. 1976). *See also B & B Insulation, Inc. v. OSHRC*, 583 F.2d 1364, 1371–72 (5th Cir. 1978).

It is . . . clear that the general duty requirement should not be used to set ad hoc standards. The bill already provides procedures for establishing temporary emergency standards. It is expected that the general duty requirement will be relied upon infrequently and that primary reliance will be placed on specific standards which will be promulgated under the act. After all . . . one of the primary purposes in enacting this legislation stems from the need to provide employers with health standards so that they might better protect the health and safety of the worker by providing the necessary machinery and protective devices in the workplace.

116 Cong.Rec. (Dec. 17, 1970) (remarks of Rep. Steiger, one of the House managers), *reprinted in* Legislative History of the Occupational Safety and Health Act of 1979, at 1217 (1973). See also Morey, *The General Duty Clause of the Occupational Safety and Health Act of 1970*, 86 Harv.L.Rev. 988, 992–93 (1973).

14. It appears that very few employers have been cited for willful violations absent a specific safety standard. See Pet. Reply Brief, Appendix A. We have found only two cases in the courts of appeals discussing willfulness where a violation of only the general duty clause was charged. *See Babcock & Wilcox Co. v. OSHRC*, 622 F.2d 1160 (3d Cir. 1980); *Empire-Detroit Steel v. OSHRC*, 579 F.2d 378 (6th Cir. 1978).

Numerous cases have upheld citations for willful violations where specific regulations

the Act's gradations of penalties and violations is notably more difficult in this context. In particular, we confront the task of maintaining the statutory distinction between a "willful" violation and a "serious" violation.[15]

The Act's definition of a "serious" violation contains two elements: (1) hazard and (2) knowledge.[16] First, a hazard exists when there is substantial probability that death or serious harm could result from the condition in question. The Secretary need not prove that an accident is probable; it is sufficient if an accident is possible and its probable result would be serious injury or death. *Usery v. Hermitage Concrete Pipe Co.*, 584 F.2d 127, 131–32 (6th Cir. 1978); *Shaw Constr., Inc. v. OSHRC*, 534 F.2d 1183, 1185 (5th Cir. 1976); *California Stevedore & Ballast Co. v. OSHRC*, 517 F.2d 986, 987–88 (9th Cir. 1975). Second, an employer is liable only if he knew or reasonably should have known of the hazardous condition. *See generally Danco Constr. Co. v. OSHRC*, 586 F.2d 1243 (8th Cir. 1978).

In this case there is sufficient evidence to sustain a finding of a serious violation.

The elevator bypass system involved the possibility of an accident; in the circumstances, such an accident was likely to result in serious injury or death. The record also supports the conclusion that St. Joe officials knew or in the exercise of reasonable diligence should have known of the hazard.

■ In addition to evidence showing the existence of a hazard and employer's actual or constructive knowledge of the hazard, establishing a willful violation requires proof that the employer intentionally disregarded or was indifferent to the requirements of the Act.[17] This is true whether the basis of the charge is a violation of a specific regulation, *Western Waterproofing*, 576 F.2d at 142–43, or a violation of the general duty clause, *Empire-Detroit Steel v. OSHRC*, 579 F.2d 378, 384–85 (6th Cir. 1978). As a practical matter, however, a more concrete evidentiary showing is required to prove willfulness in the latter context. "Since the general duty clause is so broad, the evidence to support a charge of violation should be specific and detailed." *Brennan v. OSHRC (Hanovia Lamp)*, 502

were breached. *See Mineral Industries & Heavy Constr. Group v. OSHRC*, 639 F.2d 1289 (5th Cir. 1981) (earthmoving equipment regulation); *Universal Auto Radiator Mfg. Co. v. Marshall*, 631 F.2d 20 (3d Cir. 1980) ("point of operation guard" regulation); *Georgia Electric Co. v. Marshall*, 595 F.2d 309 (5th Cir. 1979) (highway construction regulation); *Kent Nowlin Constr. Co. v. OSHRC*, 593 F.2d 368 (10th Cir. 1979) (trenching regulations); *Cedar Constr. Co. v. OSHRC*, 587 F.2d 1303 (D.C.Cir. 1978) (trenching regulations); *Intercounty Constr. Co. v. OSHRC*, 522 F.2d 777 (4th Cir. 1975), *cert. denied*, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976) (trenching regulation); *F. X. Messina Constr. Corp. v. OSHRC*, 505 F.2d 701 (1st Cir. 1974) (trenching regulation).

**15.** As the Third Circuit has noted:
It is obvious from the size of the penalty which can be imposed for a "willful" infraction—ten times that of a "serious" one—that Congress meant to deal with a more flagrant type of conduct than that of a "serious" violation.
*Frank Irey, Jr., Inc. v. OSHRC*, 519 F.2d 1200, 1207 (3d Cir. 1974), *aff'd en banc*, 519 F.2d 1215 (1975), *aff'd on other grounds sub nom. Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1978).

Our definition of willfulness recognizes this distinction between "willful" and "serious" violations, and we review the evidence to ensure that it is preserved here.

**16.** For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.
29 U.S.C. § 666(j).

**17.** It is the employer's intent, rather than his purpose or motive, which is relevant to determining willfulness. *National Steel & Shipbuilding Co. v. OSHRC*, 607 F.2d 311, 313–16 (9th Cir. 1979); *Georgia Electric Co. v. Marshall*, 595 F.2d 309, 318–19 (5th Cir. 1979); *Kent Nowlin Constr. Co. v. OSHRC*, 593 F.2d 368, 372 (10th Cir. 1979). *See also Babcock & Wilcox Co. v. OSHRC*, 622 F.2d 1160, 1167–68 (3d Cir. 1980); *George Hyman Constr. Co. v. OSHRC*, 582 F.2d 834, 839–40 & n.11 (4th Cir. 1978) (Lay, J.).

F.2d 946, at 952–53 (3d Cir. 1974). *Accord, National Realty & Constr. Co., Inc. v. OSHRC*, 489 F.2d 1257, 1265–68 & n.41 (D.C.Cir.1973). The Secretary must carry the burden of proving the employer's intentional disregard of, or plain indifference to the very broad duty to "furnish . . . a place of employment . . . free from recognized hazards. . . ." 29 U.S.C. § 654(a)(1).

Two courts of appeals have considered the evidence necessary to prove a willful violation of the general duty clause. In *Empire-Detroit Steel v. OSHRC*, 579 F.2d 378 (6th Cir. 1978), water entrapped by molten slag caused an explosion in petitioner's steel mill, killing an employee. The accident precipitated an inspection by the Department of Labor, resulting in an uncontested citation for violation of the general duty clause. The petitioner, however, continued the offending practice and the explosions occurred regularly. More than a year later, two explosions injured ten employees, and the petitioner was cited for a willful violation of the general duty clause. The court of appeals affirmed the finding of a willful violation, noting that despite the earlier fatal accident and the OSHA citation the petitioner had taken no action to remedy the hazardous condition.

*Babcock & Wilcox Co. v. OSHRC*, 622 F.2d 1160 (3d Cir. 1980), involved a similar hazard. A Labor Department inspector noted a pool of water on the floor near a furnace used to melt scrap steel. He observed the routine pouring of molten steel from the furnace into a ladle and then into molds. He cited the petitioner for a willful violation of the general duty clause, due to the danger of explosion should molten steel come in contact with the water on the floor. The court of appeals affirmed a finding of a serious violation but reversed the ALJ's conclusion that the violation was willful. The court pointed out that employees were in the process of removing the spilled water and that there was some risk of molten metal escaping from the furnace even if the pour had been delayed. The court found insufficient support in the record for the conclusion that the employer acted with either intentional disregard of, or plain indifference to the general duty clause.[18]

 The Secretary, citing *Empire-Detroit Steel*, argues primarily that St. Joe's failure over time to abandon the bypass procedure evidences indifference to the requirements of the Act. In this case, we do not find the passage of time alone sufficient to prove willfulness.[19] The elevator was used to haul heavy freight, equipment and vehicles. On occasion, the elevator doors were damaged in loading or unloading. If the door-locking mechanism malfunctioned, the bypass was used until repairs could be made. An employee was also assigned to assist in opening and closing the doors and to prevent the elevator from moving while being loaded or unloaded. As noted, a reasoned application of the Act's penalty scheme requires that to prove a willful violation there must be evidence, apart from

---

**18.** In an earlier case, the Third Circuit had defined willfulness as follows:

> Willfulness connotes defiance or such reckless disregard of consequences as to be equivalent to a knowing, conscious, and deliberate flaunting [flouting] of the Act. Willful means more than merely voluntary action or omission—it involves an element of obstinate refusal to comply.

*Frank Irey, Jr., Inc. v. OSHRC*, 519 F.2d 1200, 1207 (3d Cir. 1974), *aff'd en banc*, 519 F.2d 1215 (3d Cir. 1975), *aff'd on other ground sub nom. Atlas Roofing Co., Inc. v. OSHRC*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977).

In *Babcock & Wilcox*, the Third Circuit held that it was not reversible error for the ALJ to apply the "intentional disregard of, plain indifference to" standard. The court concurred in the view that the possible difference in emphasis between the two formulations of willfulness does not rise to the level of a conflict among the circuits, and that the two approaches are likely to yield the same results in particular cases. 622 F.2d at 1167–68, approving *Cedar Constr. Co. v. OSHRC*, 587 F.2d 1303, 1305 (D.C.Cir.1978).

**19.** We do not conclude that a finding of willful violation of the general duty clause may be upheld only if the employer is put on notice by a prior OSHA citation or an accident of identical nature. We agree with the *Empire-Detroit* court, however, that these are relevant factors. On the whole, in the present case there was no such marked inattention to safety as the court found in *Empire-Detroit*.

that establishing knowledge of the hazard, from which we may reasonably conclude that the employer intentionally disregarded or was indifferent to the safety of the workplace. Such evidence is lacking on this record. Although it is clear in hindsight that some risk remained, the petitioner's conduct falls short of plain indifference to the general duty clause.

In sum, we hold that (1) the Commission did not err in granting the Secretary leave to amend his complaint; (2) the evidence supports the charge that St. Joe violated the general duty clause; and (3) there is not substantial evidence to support the determination that the violation was willful.

The petition for review is granted as to the finding of a willful violation. Having found the record evidence sufficient, however, to establish a serious violation, we remand to the Commission for determination and imposition of an appropriate penalty.[20]

---

**20.** Although this court has power to review and modify the decisions of the Commission, 29 U.S.C. § 660(a), the assessment of penalties is a matter within the Commission's initial discretion. *Beall Constr. Co. v. OSHRC*, 507 F.2d 1041, 1046 (8th Cir. 1974); *Brennan v. OSHRC (Hanovia Lamp)*, 502 F.2d 946, 953 (3d Cir. 1974).