730 P.2d 878

**MARKWOOD ENTERPRISES, LTD., Petitioner,**

v.

**DIVISION OF OCCUPATIONAL SAFE-TY AND HEALTH, OF the INDUSTRI-AL COMMISSION OF ARIZONA, Respondent.**

**No. 1 CA–IC 3483.**

Court of Appeals of Arizona, Division 1, Department D.

Dec. 18, 1986.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Commission of Arizona by Kenneth C. Behringer, Phoenix, for respondent.

OPINION

EUBANK, Presiding Judge.

This is a Special Action—Industrial Commission (Rule 10, Arizona Rules of Procedure for Special Actions) review of a decision and order of the Occupational Safety and Health Review Board (Review Board), which reinstated a dismissed citation for a serious violation of 29 C.F.R. § 1928.-57(a)(8)(i)(guard design standards) and a $240 penalty against the petitioner (Markwood). Markwood raises two issues for our consideration: first, whether the Division of Occupational Safety and Health of the Industrial Commission of Arizona (Division) appropriately cited Markwood under the guard design standard; and second, whether the Review Board exceeded its authority when it found that Markwood also violated 29 C.F.R. § 1928.-57(c)(3)(i)(functional component standard), if it were applicable. We conclude that the independent application of either the guard design standard or the functional component standard is erroneous. We find that

these two standards are complementary and are both applicable to the facts in this case. Since the Division cited Markwood under a superceded version of the guard design standard, we set aside the decision and order of the Review Board and affirm the decision of the administrative law judge which dismissed the citation.

Our standard of review in this matter is governed by A.R.S. § 23–423(I). It authorizes this court to either affirm, modify or set aside the decision of the review board in whole or in part. Findings of fact, on the other hand, are conclusive on us if they are supported by substantial evidence in the record. *Id. McAffee-Guthrie, Inc. v. Division of Occupational Safety and Health,* 128 Ariz. 508, 627 P.2d 239 (1981). This standard of review is much broader than that provided for Worker's Compensation awards, which limit our review to either setting aside or affirming the award. A.R.S. § 23–951. Thus, under an A.R.S. § 23–423(I) review, we have the same revisory jurisdiction that we have in our regular civil appeals. Art. 6 § 9, Ariz. Const.; A.R.S. § 12–120.21(A).

The facts are as follows. Markwood operates a dairy in Chandler, Arizona. The citation and penalty issued to Markwood by the Division arose out of an accident at the dairy on June 28, 1984. Richard Metz (Metz), a driver-deliveryman for Dairy Nutrition Services, Inc., was seriously injured while delivering a truckload of cattle feed to Markwood. Deliveries were made by positioning the truck over a stationary in-ground auger [1] (auger) and dumping the feed into the auger trench. Metz was directed to the auger by a Markwood employee, shown how to operate the auger equipment, and then left to make his delivery.

Metz had begun removing the tarp from his truck when his left foot slipped on some feed and fell through the grate covering the auger trench. The operating auger pulled in Metz' foot, traumatically amputat-

ing his left leg below the knee. A similar incident had occurred several years before this one but fortunately the power shut off and the victim received only broken bones.

Markwood installed the auger in 1979. It was located in a one and a half foot deep concrete trench and was covered with an iron grate so that delivery trucks could drive over it in order to position themselves for dumping their grain. The rectangular grate was approximately one foot wide by fourteen feet long with 24 diagonal cross-bars, approximately three inches apart. Following Metz' accident, two pieces of narrow pipe were added under the grate which ran its entire length. The openings in the grate allowed grain and feed to flow down into the auger, which was used primarily to convey grain and feed to underground storage bins and to mill whole grains into different types of feed.

The Division became aware of Metz' accident through a newspaper article on June 29, 1984. Following compliance inspections on July 2 and 16, 1984, a citation and notification of penalty were issued to Markwood on July 19, 1984, for a serious violation of 29 C.F.R. § 1928.57(a)(8)(i). The citation stated:

> Guards used to provide protection were not designed and located to *prevent* inadvertent contact with the hazard being guarded:
>
> > (a) Grain Storage Area—The dump bin main auger grate, or guard had openings large enough to allow accidental contact with auger.

(Emphasis added).

Markwood timely contested this citation and a hearing was conducted before the Industrial Commission. The administrative law judge found that Markwood was not cited under the appropriate provision and dismissed the citation and penalty. The Division sought review of the administra-

---

1. A conveyor with screw type flighting in a tubular shaped enclosure used to convey materials by rotating the flighting in relation to the enclosure, permanently installed at a particular site.

American Society of Agricultural Engineers, ASAE Standards 1984, § 374, *Terminology and Specification Definitions for Agricultural Auger Conveying Equipment.*

tive law judge's award before the Review Board. The Review Board found that the Division cited Markwood under the appropriate regulation and reinstated the citation and penalty. The Review Board adopted the administrative law judge's reasons for finding Markwood violated the guard design standards, i.e., the guard did not prevent Metz' foot from coming in contact with the auger. Markwood brought this petition for certiorari to review the decision of the Review Board.

Arizona has adopted the Federal Occupational Safety and Health Standards for Agriculture, Title 29, Part 1928, Subparts (A) through (D) inclusive, with amendments as of November 1, 1977. A.R.S. § 23–410. These standards apply to agricultural activity by both public and private employers. *See* A.C.R.R. R4–13–603.

The provisions of 29 C.F.R. § 1928.57 which govern the resolution of the issues presented in this case are as follows:

**§ 1928.57 Guarding of farm field equipment, farmstead equipment, and cotton gins.**

(a) *General*—

(1) *Purpose.* The purpose of this section is to provide for the protection of employees from the hazards associated with moving machinery parts of farm field equipment, farmstead equipment, and cotton gins used in any agricultural operation.

(2) *Scope.* Paragraph (a) of this section contains general requirements which apply to all covered equipment. In addition, paragraph (b) of this section applies to farm field equipment, paragraph (c) applies to farmstead equipment, and paragraph (d) applies to cotton gins.

\*　　\*　　\*　　\*　　\*　　\*

(5) *Definitions.*

\*　　\*　　\*　　\*　　\*　　\*

"*Farmstead equipment*" means agricultural equipment normally used in a stationary manner. This includes, but is not limited to, materials handling equipment and accessories for such equipment

whether or not the equipment is an integral part of a building.

\*　　\*　　\*　　\*　　\*　　\*

A "*guard*" or "*shield*" is a barrier designed to protect against employee contact with a hazard created by a moving machinery part.

\*　　\*　　\*　　\*　　\*　　\*

(8) *Strength and design of guards.*

(i) Where guards are used to provide the protection required by this section, they shall be designed and located *to protect against* inadvertent contact with the hazard being guarded.

\*　　\*　　\*　　\*　　\*　　\*

(c) *Farmstead equipment*—

\*　　\*　　\*　　\*　　\*　　\*

(3) *Functional components.*

(i) Functional components, such as choppers, rotary beaters, mixing augers, feed rolls, conveying augers, grain spreaders, stirring augers, sweep augers, and feed augers, which must be exposed for proper function, shall be guarded to the fullest extent which will not substantially interfere with the normal functioning of the component. (Emphasis added).

Initially, we note that Title 29, Part 1928 was amended on October 14, 1976, effective October 25, 1976. These amendments were adopted by Arizona, A.C.R.R. R4–13–603. Section 1928.57(a)(5) which defines a guard was amended, deleting "to prevent," to read that "a guard or shield is a barrier designed *to protect against* employee contact with a hazard created by a moving machinery part" and § 1928.57(a)(8)(i) was amended by deleting the word "prevent" and substituting in its place the words "protect against". 41 Fed.Reg. 46,598 (1976)(emphasis added). The text accompanying these changes in the Federal Register noted that they were being made principally to correct a minor inconsistency in certain general terms used in the standard and to clarify the intended meaning of two portions of the standard.

Markwood first argues that its conveying auger was a functional component of farmstead equipment because it had to be exposed to function properly and was therefore subject to the functional component standard instead of the guard design standard. Markwood further argues that even if its auger were subject to the general requirements of the guard design standard, those requirements conflict with the specific requirements of the functional component standard and rules of statutory construction mandate that the specific provision prevails.

The Division responds that the specific requirements of the functional component standard are inapplicable since the Markwood auger was covered by a grate, rather than "exposed," and therefore, only the general requirements of the guard design standard apply. Further, the Division argues that violation of the general requirements was clear since the Markwood grate *did not prevent* Metz' inadvertent contact with the auger.

The guard design standard contains general requirements for the *design of guards* for all types of agricultural equipment. It requires guards to be designed to protect against inadvertent contact with the hazard being guarded. The functional component standard contains requirements for the *extent* to which all farmstead equipment must be guarded. It requires farmstead equipment "be guarded to the fullest extent which will not substantially interfere with the normal functioning of the component." This section takes into consideration the inability to prevent all contact with the functional components of farmstead equipment in agriculture, which in many instances must be exposed to function properly.

▇ The Markwood auger was used to convey feed into storage bins. It was a piece of agricultural equipment subject to the general guard design requirements of

§ 1928.57(a)(8)(i). We must determine whether it was also a functional component of farmstead equipment subject to the requirements of § 1928.57(c)(3)(i), specifically for a conveying auger.

Although the parties agree that the Markwood auger was a piece of farmstead equipment, i.e., agricultural equipment normally used in a stationary manner, the Division disagrees that the auger was a "functional component." A functional component, such as a conveying auger, is a component which must be exposed to function properly.

In construing legislative language, words are to be given their ordinary common meaning unless it appears from the context or otherwise that a different meaning should control. *Padilla v. Industrial Commission*, 113 Ariz. 104, 546 P.2d 1135 (1976); *Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975). Exposed has been defined to mean "open to view and accessible." Webster's Ninth New Collegiate Dictionary 438 (1985). The Markwood auger was located in an open trench covered with a grate which had openings to allow feed to fall down through into the trench. It is clear that the auger had to be accessible and open to view to be used for its intended purpose, dumping feed. Therefore, the Markwood auger was exposed and was also a functional component pursuant to § 1928.57(c)(3)(i).

▇ In our opinion, the Markwood auger falls within the ambit of both the guard design standard and the functional component standard. Markwood argues that the specific provisions of the latter take precedence over the general provisions of the former. But before rules of statutory construction are necessary, the two applicable provisions must deal with the same subject matter and be inconsistent or conflicting.[2] *Arden-Mayfair, Inc. v. State*, 123 Ariz. 340, 599 P.2d 793 (1979); *Evans v. Young*, 135 Ariz. 447, 661 P.2d 1148 (App.1983).

**2.** The Review Board correctly surmised that the regulatory construction provisions of 29 C.F.R. § 1910.5(c)(2) have not been adopted in Arizona and are not applicable in this case. Section 1928.21(a), which has been adopted in Arizona, lists the standards from Part 1910 which apply to agricultural operations. Section 1910.5(c)(2) is not included.

In this instance, the two provisions can be read together consistently. The general requirements of the guard design standard concern the strength and design of guards for all types of agricultural equipment. That section merely provides that these guards should be *designed to protect against* inadvertent contact with the hazard being guarded. This is not inconsistent with the functional component standard, which discusses the *extent* to which a conveying auger must be guarded. A conveying auger must be guarded to the fullest extent which will not substantially impair its normal functioning, but a guard for a conveying auger should still be *designed* to protect against inadvertent contact with the auger. These provisions deal with two separate aspects of the same subject, guarding of farmstead equipment, and are not in conflict.

This interpretation is also consistent with the language in § 1928.57(a)(2) which discusses the scope of this section. It provides that paragraph (a)(guard design standard) of the section contains general requirements for all covered equipment, *in addition to which* paragraph (c)(functional component standard) applies to farmstead equipment.

The Division also cites the March 3, 1976 comments of the Assistant Secretary of Labor in support of its position that the citation was under the appropriate standard. Although not specifically adopted in Arizona, we believe that these comments provide a valuable insight into the legislative history of this provision. It is important to read the comments quoted by the Division in context.

Comments were also received concerning the proposed paragraph (c)(3)(ii) requirements on auger flighting. These comments argued that the American Society of Agricultural Engineers (ASAE) recommendation R354, 'Safety for Farmstead Equipment,' was intended to apply only to portable augers, and that the restrictions in the proposed rule would prevent normal use of other than portable augers, since the size of openings would not allow certain materials to pass through (e.g., comment 291, 330).[3] It was also pointed out, citing the same ASAE recommendation that the requirement, contained in paragraph (c)(3)(i) of the proposal, for the guarding of sweep arm gathering mechanisms in bulk storage structures was intended in its application to be limited to silos, and would not be appropriate for all bulk material storage facilities (comment 330). This is because the sweep arm gathering mechanisms in silos is [sic] located on the top surface of materials, whereas in other bulk storage facilities they are located on the bottom of the structure and are buried under the stored material. Since it is inappropriate to apply paragraph (c)(3)(i) of the proposal to all bulk material storage structures and to apply paragraph (c)(3)(ii) of the proposal to non-portable augers, the final rule reflects the appropriate limitations in paragraphs (c)(3)(ii) and (c)(3)(iii) respectively. In addition, since the record does not provide any information as to specific requirements necessary or appropriate to protect employees working with non-portable augers or in other bulk material storage facilities, the final rule contains no specific requirements for these situations. However, the general requirements of the final rule apply in these circumstances and, if appropriate, future rulemaking proceedings will be initiated to determine whether specific requirements are necessary or appropriate for non-portable augers and bulk material storage structures.

This comment can be summarized as providing specific requirements for the guard design on two types of farmstead equipment: portable augers and sweep arm material gathering mechanisms within silo structures. The comment provides that

---

**3.** The requirements on auger flighting were actually adopted from ASAE tentative standard S361T, "Safety for Agricultural Auger Conveying Equipment." ASAE R354 was apparently cited in error for this language.

since there are no specific requirements promulgated for nonportable augers or bulk material storage facilities, these types of farmstead equipment remained subject to the general guard design requirements of the final rule, i.e., § 1928.57(a)(8)(i)—guard design for all types of agricultural equipment. This comment is also consistent with our previous interpretation of this section and does not effect § 1928.-57(c)(3)(i), the extent to which functional components of farmstead equipment must be guarded. Thus, the design of the guard on the Markwood auger must conform to the requirements of § 1928.57 (a)(8)(i) and the extent to which it must be guarded is controlled by § 1928.57(c)(3)(i).

An example of this interrelationship is that many types of covers over the auger trench would "protect against" contact with the auger (guard design standard) but the extent to which the auger trench could be covered and still allow the auger to properly function dictates the type of cover (functional component standard). Either a solid metal plate or a metal grate with sufficient openings to accommodate grain and other materials would satisfy the guard design standard but only the latter would also satisfy the functional component standard.

The Division cited Markwood under the pre-amendment version of § 1928.57(a)(8)(i), which required that guards be designed *to prevent* inadvertent contact with the hazard being guarded. This standard was absolute and conflicted with the functional component standard, apparently the very reason it was amended. Following the amendment, we find that the guard design standard and the functional component standard are consistent and must be applied together. The Division erred in applying only one standard to Markwood, that standard also being obsolete. For these reasons, we find that the decision of the Review Board must be set aside and, as found by the administrative law judge, the citation must be dismissed. Because of

this holding, we do not reach the second issue raised by Markwood.

GRANT and HAIRE, JJ., concur.