837 P.2d 174

**DIVISION OF OCCUPATIONAL SAFETY AND HEALTH OF the INDUSTRIAL COMMISSION of Arizona, Petitioner,**

v.

**BALL, BALL AND BROSAMER, INC., Respondent.**

No. 1 CA–IC 91–0154.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 25, 1992.

Anita Valainis, Chief Counsel, Indus. Com'n of Arizona by Kent M. Struckmeyer, Asst. Chief Counsel, Phoenix, for petitioner Indus. Com'n.

Gallagher & Kennedy, P.A. by G. Starr Rounds, Phoenix, for respondent.

## OPINION

GERBER, Judge.

This case results from the collapse of a wall which caused death and injuries to employees of respondent, Ball, Ball & Brosamer, Inc. Petitioner, the Division of Occupational Safety and Health of the Industrial Commission of Arizona, seeks special action review from the decision of the Occupational Safety and Health Review Board ("the board") which determined that respondent did not "willfully" violate 29 CFR § 1926.703(d)(1)(1988).[1] Petitioner also challenges the board's reduction of the civil penalty from $7,000 to $5,000.

## STANDARD OF REVIEW

Under Ariz.Rev.Stat.Ann. ("A.R.S.") section 23–423(I) (1983), we may affirm, modify or set aside the decision of the board in whole or in part. *Markwood Enter., Ltd. v. Division of Occupational Safety & Health,* 152 Ariz. 169, 170, 730 P.2d 878, 879 (App.1986). We review the board's findings of fact and conclusions of law based on its de novo review of the record. *Id.; see* A.R.S. § 23–423(F). We will affirm the board's findings of fact if they are supported by substantial evidence. A.R.S. § 23–423(I); *McAfee-Guthrie, Inc., v. Division of Occupational Safety & Health,* 128 Ariz. 508, 510, 627 P.2d 239, 241 (App. 1981).

Arizona has adopted the Federal Occupational Safety and Health Standards, Code of Federal Regulations, Title 29, Part 1926, (including the regulation at issue here, 29 CFR 1926.703(d)(1)) commonly known as "OSHA." A.R.S. § 23–410; A.C.R.R. R4–13–601 (1991). This regulation governs all practices related to construction activity by private and public employers within Arizona. A.C.R.R. R4–13–601. Our duty is to consider this regulation in light of the facts of this accident.

## FACTS AND PROCEDURAL HISTORY

These facts are taken from the board's findings. Respondent was employed by the Bureau of Reclamation to perform construction work on the Central Arizona Project in the vicinity of Waddell Dam near Lake Pleasant, Arizona. Respondent was constructing a pumping/generating station including a bypass structure with three rebar structures (lines 21, 22 and 23). Line 23 was 32 feet high and 70 feet long.

On the date of the accident, four experienced ironworkers were working on line 23: McKinley, Sambaluk, Brooks and Etsitty. Etsitty was the immediate supervisor of the men. Northern, also an employee of respondent, was the general foreman responsible for the crew's assignment. Etsitty and his crew reported to Northern. There was no immediate work for Etsitty and his crew because the carpenters were not finished with their work. Etsitty told Northern that he was taking his crew over to the bypass structure to "finish it off." Etsitty thought that Northern knew that he was going to work on line 23. Northern later stated he did not know that Etsitty and his crew were going to work on line 23 because, according to Northern, he was unaware that it required additional work.

Etsitty took his crew to the bypass area to work on line 23. According to Etsitty, line 23 was "slightly out of plumb." The workers attempted to straighten it out. They attached a "come-along," to straight-

1. 29 CFR § 1926.703 **Requirements for cast-in-place concrete.**

   (d) **Reinforcing steel.**

   (1) Reinforcing steel for walls, piers, columns, and similar vertical structures shall be adequately supported to prevent overturning and to prevent collapse.

**374**

en the wall. All four men were tied onto line 23 near its top. They noticed a sway in the wall which they first thought was normal. When the sway became more pronounced the men unhooked themselves and attempted to climb down. The wall fell to the east and injured all four men. Sambaluk later died from his injuries.

Prior to the accident, employees of respondent had attached guy wires to the east side of the wall but not to the west side. The purpose of the guy wires was to provide opposite direction tension to ensure the stability of the wall. Northern gave four reasons why line 23 was not guyed bilaterally: (1) guy wires on the west side would interfere with the scheduled backfilling of cement; (2) respondent did not have the right size cable clamps to attach to the guy wires; (3) line 23 was sufficiently supported with internal rebar to withstand workers climbing on it; and (4) the rebar portion of line 23 was completed.

Although the board did not make this finding, the record reflects that safety inspectors from the Bureau of Reclamation were assigned to each construction project at the site. They had the authority to stop the construction if they noted an unsafe practice or condition. The inspectors viewed the site but did not complain about the bypass area where the accident occurred.

After the accident, petitioner cited respondent for a serious and a "willful" violation of the Occupational Safety and Health Act, 29 CFR § 1926.703(d)(1),[2] and proposed a $10,000 penalty assessment. A.R.S. § 23–418(A) (1991). In response, respondent filed a Notice of Contest and request for a hearing before the Industrial Commission.

After the hearing, the Administrative Law Judge ("A.L.J.") determined that the use of guy wires was an acknowledged safety practice utilized by respondent and that failure to guy the west side of line 23 was "intentional." Petitioner argued at the hearing that the accident "could have been prevented" if the west side of line 23 was guyed to provide support to withstand loads such as the weight of the workers. The A.L.J. ruled that "the rebar structure referred to as line 23 was not adequately supported to prevent collapse while Mike Etsitty and his crew attempted to take the 'rack' out of it on October 19, 1989."

The A.L.J. concluded that respondent violated the regulation. He ruled that the violation merited a "serious" classification because the accident resulted in several injuries and one fatality. A.R.S. § 23–401.12 (1983).[3] The A.L.J. also concluded that the violation was technically "willful" because, in his view, respondent's failure to guy the west side of line 23 was intentional. A.R.S. § 23–418(A).[4] The A.L.J. reduced the proposed penalty to $7,000.

Respondent then filed a Request for Review to the board. The board found that petitioner met its burden of proof in establishing these elements of a serious violation:

(1) The existence of a condition or practice in a place of employment which violated a regulation.

(2) The condition produced a substantial probability that death or serious physical injury could occur.

(3) The employer had actual or constructive knowledge of the violation.

A.R.S. § 23–401.12.

The board ruled that the record supported a finding that all three elements of

**2.** We will refer to 29 CFR § 1926.703(d)(1) as "the regulation" since it is the only regulation at issue in this case.

**3. § 23–401. Definitions**

12. "Serious violation" means a condition or practice in a place of employment which violates a standard, regulation or § 23–403, subsection A and produces a substantial probability that death or serious physical harm could result, unless the employer did not, and could not with the exercise of reasonable diligence,

know of the presence of such condition or practice.

**4. § 23–418. Penalties; violation; classification**

A. Any employer who wilfully or repeatedly violates the requirements of § 23–403 or any standard or regulation promulgated pursuant to § 23–410 or 23–414 or any provision of this article may be assessed a civil penalty of not more than ten thousand dollars for each violation.

a serious violation were present. The board determined that the conduct of respondent violated the regulation because line 23 was not adequately supported "with regard to what the workers were doing on it at the time of the accident." The board found that the second element above was satisfied because the men were exposed to a hazardous condition resulting in death and injuries.

The board then concluded that respondent had "constructive knowledge" of the violation because Northern "could have discovered the violation with the exercise of reasonable diligence." A.R.S. § 23–401.12. The board imputed constructive knowledge to the employer because, in its view, if Northern had supervised his workers at the scene "the come-along method would not have been used, or the attempt to straighten out Line 23 may have been aborted altogether."

The board identified the following facts to support its finding of constructive knowledge. Northern did not discuss methodology or oversee his workers when Etsitty informed him that the crew was going to the bypass structure to "finish it off." Northern stated that he would not have used the same method the workers used to straighten line 23. Northern also stated that line 23 did not require straightening because the anticipated pouring of cement would straighten the wall or would enable realignment without untying the support rebar.

The board unanimously concluded that the evidence supported a finding of a "serious" violation because respondent did not provide adequate supervision of its employees to ensure adequate support of line 23. The board also unanimously determined that the violation was not "willful" because, in its view, respondent attempted to adequately support line 23 as constructed. The board found that the evidence did not establish "intentional disregard of" or "plain indifference to" the regulation under the definition of "willfulness" in *National Steel & Shipbuilding Co. v. Occupational Safety & Health Review Comm'n,* 607

F.2d 311, 314 (9th Cir.1979). The board reduced the penalty to $5,000.

Petitioner filed a timely OSHA special action in this court. We have jurisdiction pursuant to A.R.S. section 23–423.I.

## DISCUSSION

Petitioner sets forth two arguments:

(1) Whether the board erred in its determination that the violation was not willful.

(2) Whether the board erred in its reduction of the civil penalty.

■ Before we address these arguments, we must first define the technical meaning of "willful." Arizona has not yet adopted a definition of "willful" within the meaning of A.R.S. section 23–418. When faced with a problem of statutory construction, we generally adopt the interpretation given by the agency charged with its application. *Walter O. Boswell Memorial Hosp., Inc. v. Yavapai County,* 148 Ariz. 385, 389, 714 P.2d 878, 882 (App.1986). The board adopted the definition of "willfulness" in *National Steel & Shipbuilding Co. v. OSHRC,* 607 F.2d 311 (9th Cir.1979). The parties accept this definition, as we do. *National Steel* defined a "willful" violation as one involving voluntary action by an employer done either with an "intentional disregard" or "plain indifference" to the governing safety regulation. 607 F.2d at 314.

*National Steel* adopted its definition of "willful" from a majority of the other circuits:

The First Circuit defined willfulness as 'a conscious, intentional, deliberate, voluntary decision' even if there is no bad motive. *Id.* [*F.X. Messina Construction Corp. v. Occupational Safety & Health Review Commission,* 505 F.2d 701] at 702 [ (1st Cir.1974) ]. The Fourth, Fifth, Sixth, Eighth, and Tenth Circuits have embraced similar definitions which do not require a showing of bad motive. *See, e.g., Intercounty Construction Co. v. Occupational Safety & Health Review Comm.,* 522 F.2d 777, 779–81 (4th Cir. 1975), *cert. denied,* 423 U.S. 1072, 96

S.Ct. 854, 47 L.Ed.2d 82 (1976); *Georgia Electric Co. v. Marshall*, 595 F.2d 309, 317–19 (5th Cir.1979); *Empire–Detroit Steel Div. v. Occupational Safety & Health Review Commission*, 579 F.2d 378, 385 (6th Cir.1978); *Western Waterproofing Co. v. Marshall*, 576 F.2d 139, 142–43 (8th Cir.1978), *cert. denied*, 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1979); *United States v. Dye Construction Co.*, 510 F.2d 78, 81–82 (10th Cir. 1975). The majority has also approved the precise verbal formula urged by the Secretary, defining 'a willful violation as one involving voluntary action, done either with an intentional disregard of, or plain indifference to, the requirements of the statute.' (Citations omitted.) This formula is based upon a Supreme Court decision defining willfulness in the context of a different statute providing for a civil penalty. *United States v. Illinois Central Railroad Co.*, 303 U.S. 239, 243, 58 S.Ct. 533 [535], 82 L.Ed. 773 (1938). 607 F.2d at 313–14. According to these cases, a "willful" violation is predicated on the employer's knowledge of the condition coupled with acting with either "intentional disregard" or "plain indifference" to the regulation. *See generally*, Nothstein, *The Law of Occupational Safety Health*, The Free Press (N.Y.1981) 353–57.

The Commission defines as willful a violation that is intentional and knowing, as distinguished from accidental, and displays a careless or reckless disregard or plain indifference to the Act or its requirements. *See Dic–Underhill, A Joint Venture*, 5 OSHC 1251 (1977)—knowledge of law and plain indifference demonstrated by eleven outstanding final orders for violations of the same standard; *PAF Equipment Co.*, 7 OSHC 1209 (1979); *Georgia Electric Co.*, 5 OSHC 1112 (1977), *enf'd*, 595 F.2d 309, 7 OSHC 1343 (5th Cir.1979)—violation willful because of evidence of indifference to employee safety and blatant ignoring of requirements of the Act; *Titanium Metals Corp. of America*, 7 OSHC 2172 (1980)—willfulness is established by a conscious, intentional, deliberate decision; *D. Federico Co.*, 3 OSHC 1970 (1976); *C.N.*

*Flagg & Co.*, 2 OSHC 1195 (1974). *Cf. Graven Brothers & Co.*, 4 OSHC 1045 (1976)—knowledge of a standard and subsequent violation not a willful violation without demonstration of intentional disregard or plain indifference to the Act or its standards; *Environmental Utilities, Inc.*, 3 OSHC 1995 (1976).

**There are three basic elements of a willful violation: (1) employer knowledge of a violative condition which violated the Act (standard); (2) subsequent thereto, noncompliance with the standard; and (3) an act, voluntarily committed with intentional disregard or plain indifference to the Act....**

*Id.* at 353. (Emphasis added.)

Petitioner contends that the violation was "willful" because respondent had knowledge of the regulation and intentionally disregarded it by failing to guy the west side of line 23. For his part, respondent claims that line 23 was constructed in compliance with the regulation and industry standards and asserts that it lacked the mental state necessary to support a "willful" violation.

■ The threshold inquiry to determine if a violation is "willful" is whether the employer had knowledge of the hazard before the accident. *See National Steel & Shipbuilding Co.*, 607 F.2d at 315–16 n. 6; *cf. Ocean Elec. Corp. v. Secretary of Labor*, 594 F.2d 396, 399–401 (4th Cir.1979) (serious violation will be set aside when employer's conduct is an isolated incident of unforeseeable or idiosyncratic behavior); *Horne Plumbing & Heating Co. v. OSHRC*, 528 F.2d 564, 570–71 (5th Cir. 1976) (employer knowledge is an element of proof of a serious violation); *Brennan v. Occupational Safety & Health Rev. Comm'n*, 511 F.2d 1139, 1144 (9th Cir.1975) (knowledge is an element of proof in both serious and nonserious violations); *McAfee–Guthrie, Inc. v. Division of Occupational Safety & Health*, 128 Ariz. at 510, 627 P.2d at 241 (serious violation requires a showing of employer knowledge).

■ In finding that respondent committed a serious violation, the board deter-

mined that respondent had "constructive knowledge" of the condition because Northern could have discovered the presence of the condition with reasonable diligence. Respondent has not challenged the "serious violation" finding, so we are not free to disturb the findings of the board on this issue.

For the "willful" violation which is before us, we must determine whether substantial evidence supports the board's finding that respondent did not "intentionally disregard" or act "indifferently" to the regulation. Northern testified that he saw the wall but did not have notice that line 23 was unsafe. Etsitty and his crew who had been working there thought that line 23 was safe. The Bureau of Reclamation inspectors who viewed it prior to the accident did not note a safety violation or foresee the impending collapse. The record lacks any evidence that respondent "intentionally disregarded" or "recklessly ignored" the regulation. *See Martin v. OSHRC*, 941 F.2d 1051, 1059 (10th Cir.1991) (an omission or failure to act is willful if done voluntarily and intentionally).

The board's determination that respondent had only "constructive knowledge" of the hazard is insufficient to support a finding of "willful." The standard of proof for a "willful" violation is more stringent than for a "serious" violation. *Brock v. Morello Bros. Constr., Inc.*, 809 F.2d 161, 163–64 (1st Cir.1987) (a willful violation would be indistinguishable from a serious violation if it did not require at least indifference to the law); *Georgia Elec. Co. v. Marshall*, 595 F.2d 309, 317–19 (5th Cir.1979). *Georgia Electric* distinguished a serious violation from a willful violation:

> To prove a willful violation, the Secretary must show that the employer acted voluntarily, with either intentional disregard of or plain indifference to OSHA requirements. (footnote 22. This of course does not mean that every act consciously done is done willfully. The 'extra ingredient' needed for willfulness is either the element of intentional disregard or plain indifference.) To prove a serious violation, a quite different showing need only be made. The gravamen of a serious

violation is the presence of a 'substantial probability' that a particular violation could result in death or serious physical harm. Whether the employer intended to violate an OSHA regulation is irrelevant. The only question relevant to the employer's state of mind is whether he knew or with the exercise of reasonable diligence could have known of the violation.

595 F.2d at 318–19. (Citation omitted.)

■ If the board's determination that respondent "could have known" of the condition with the exercise of reasonable diligence is sufficient to establish a "willful" violation, a "willful" violation would occur in nearly every case because hindsight is always perfect after an accident. The "could have known" standard is both too broad and too infallible to fit the test of "willful." The "could have known" standard implicitly substitutes a non-existent potential knowledge for the actual knowledge possessed at the time of the accident. Actual knowledge, not potential knowledge, is the prerequisite for the assessment of "willful."

Petitioner next contends that implicit in the board's ruling is that it found that respondent escaped a willful violation by convincing the board of a good faith attempt to comply with the standard. Petitioner contends that the board should not accept respondent's good faith excuse for not complying with the regulation.

■ An employer can be found guilty of a "willful" violation even if he has a good faith belief that the work area is safe and chooses not to comply with the regulations. *Donovan v. Capital City Excavating Co, Inc.*, 712 F.2d 1008 (6th Cir.1983); *Western Waterproofing Co., Inc. v. Marshall*, 576 F.2d 139 (8th Cir.1978), *cert. denied*, 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1978); *Intercounty Constr. Co. v. OSHRC*, 522 F.2d 777 (4th Cir.1975), *cert. denied*, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976). The employer's good faith belief is not sufficient to withstand a finding of willfulness when the employer proceeds with the knowledge of non-compli-

ance with the regulation and fails to take corrective action. *See Hackney, Inc. v. McLaughlin,* 895 F.2d 1298, 1300 (10th Cir. 1990) (employer must comply with the regulation even if it has a good faith belief that its own policy is wiser).

We do not interpret the board's finding as petitioner suggests. The board did not implicitly find that respondent made a good faith attempt to comply with the regulation or that good faith somehow excused respondent's conduct. In determining that the violation was not "willful" the board held that respondent did not "disregard" or remain "indifferent" to the regulation. Respondent simply did not possess the threshold mental state to sustain a "willful" violation. Its good faith, or its absence, is irrelevant to the board's decision and to ours.

## CONCLUSION

We affirm the board's decision because we conclude that its findings of facts are supported by substantial evidence that respondent did not "disregard" or remain "indifferent" to the regulation. Because we affirm the board's finding that the violation was not willful, we do not reach petitioner's contentions that the administrative penalty was improper.[5]

CONTRERAS, P.J., and LANKFORD, J., concur.

---

5. We note that the footnote on page 6 of the OSHA Review Board's Decision and Order should refer to A.R.S. § 23–418(C) as authority for the maximum penalty for a serious violation.